**Marjorie WRIGHT, Plaintiff,**

v.

**KOSCIUSKO MEDICAL CLINIC, INC., Defendant.**

**No. S91–326M.**

United States District Court, N.D. Indiana, South Bend Division.

March 3, 1992.

Opinion on Motion to Modify April 27, 1992.

1328

Richard E. Bonewitz, South Bend, Ind., for plaintiff.

John B. Ford, John W. VanLaere, South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Marjorie Wright brings this action under the Age Discrimination in Employment Act, 29 U.S.C. §§ 623 & 626 (1988) (the "ADEA"), and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1988) ("Title VII"). The defendant seeks summary judgment on the ground that the plaintiff's claims fail to satisfy a necessary jurisdictional prerequisite. Specifically, the

defendant contends that it had too few employees to be subject to the ADEA and Title VII. For the reasons that follow, the court grants the summary judgment motion in part. Applying the law of the circuit, the court concludes that the ADEA does not apply, but, resolving an issue not squarely addressed by any authority cited by the parties, the court concludes that Title VII applies to the defendant.

### I.

The defendant, Kosciusko Medical Clinic, Inc. ("the Clinic"), operates a medical facility in Warsaw, Indiana. Ms. Wright worked as the Clinic's Officer Manager for seventeen years. In September 1989, the Clinic notified Ms. Wright, then 60 years old, of its intention to terminate her employment. She remained in the defendant's employ for about two more months, during which time she helped to assist and train Mr. Lynn Reynolds, a 29-year-old male, who was designated as the replacement Office Manager.[1]

After Ms. Wright received the notice of termination, the parties and their counsel entered into negotiations that resulted in an offer by the Clinic to pay Ms. Wright her base salary, plus certain benefits, for a two year period. A December 6, 1989 letter containing the offer stated that "this offer will expire on December 31, 1989, or upon the filing of a discrimination claim by Mrs. Wright, whichever occurs first." Ms. Wright filed a discrimination claim with the Equal Employment Opportunity Commission ("EEOC") on December 12, 1989, and settlement negotiations apparently ceased; the Clinic has made no further payments to Ms. Wright.

In 1991, after obtaining the necessary Notice of Right to Sue letter from the EEOC, Ms. Wright brought this action, asserting two theories. First, she alleges that the Clinic violated the ADEA[2] by fir-

---

[1] The Clinic contends that while Mr. Reynolds assumed some of Ms. Wright's responsibilities, the position was restructured and expanded with Mr. Reynolds' appointment. Resolution of that question is not necessary for resolving the jurisdictional issues.

[2] "It shall be unlawful for an employer—(1) to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a) (1988).

ing her and replacing her with a younger person. Second, she alleges that the Clinic's failure to honor its conditional settlement offer amounted to retaliation for her filing an age discrimination claim, which constituted a violation of Title VII.[3]

The answer to the complaint raised a number of affirmative defenses, among which was the assertion that the court lacked subject matter jurisdiction, "in that defendant is not an employer, as defined in 42 U.S.C. § 2000e(b) or 29 U.S.C. § 630(b)." The Clinic renewed this defense in a motion for summary judgment, supported by a brief and supporting affidavits. Both parties have had the opportunity to file additional memoranda and affidavits, and the motion is ripe for review.

## II.

The ADEA and Title VII each erect jurisdictional hurdles to their application. One such requirement relates to the size of the operation; these statutes do not bring comparatively small employers within their coverage. Although the two statutes contain different thresholds, they take a similar approach. The definitional portion of Title VII provides that:

> The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

42 U.S.C. § 2000e(b) (1988).[4] The ADEA's definitional provision is identical, except that it requires twenty or more employees, rather than fifteen. 29 U.S.C. § 630(b). Although these statutes might appear to require a court simply to count the number of employees, this case presents a number of complications.

### A.

The parties do not seem to dispute that the defendant is a "person", 29 U.S.C. § 630(a); 42 U.S.C. § 2000e(a), engaged in an "industry affecting commerce," 29 U.S.C. § 630(h); 42 U.S.C. § 2000e(h). The parties apparently agree that since the five physicians who maintain their medical practices at the Clinic are shareholders in the corporation, they are not to be counted as "employees."[5] For purposes of this motion, the defendant concedes that Ms. Wright, her replacement Mr. Reynolds, and assistant Office Manager Nancy Fletcher all may be counted as "employees". Finally, since Ms. Wright's termination occurred in late 1989, the relevant time period for determining the number of employees in the "current or preceding calendar year" is 1988 and 1989. *See Norman v. Levy*, 756 F.Supp. 1060, 1062 n. 3 (N.D.Ill.1990).

The case presents two related questions: (1) Which persons are to be counted as "employees"? (2) Do the statutory definitions require that the threshold number of "employees" actually work on each "working day", including on days on which the

---

3. Although the complaint does not identify a specific section of Title VII, the plaintiff presumably relies on 42 U.S.C. § 2000e–3(a), which provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

4. As originally enacted in 1964, Title VII required the employer to have twenty-five employees to trigger the application of the statute. This provision was amended in 1972, *see* 86 Stat. 103, Pub.L. No. 92–261, § 2, to reduce the required number of employees to the present level of fifteen.

5. Both the ADEA and Title VII provide that the term "employee" means "an individual employed by an employer". 29 U.S.C. § 630(f); 42 U.S.C. § 2000e(f).

Shareholders are not treated as employees of the corporation. *See Equal Employment Opportunity Comm'n v. Dowd & Dowd, Ltd.*, 736 F.2d 1177, 1178 (7th Cir.1984) (requiring "strong consideration of the economic realities of the employment relationship"). *See also Burke v. Friedman*, 556 F.2d 867, 869–870 (7th Cir.1977) (partners in accounting firm are not "employees" under 42 U.S.C. § 2000e(f)); *Fountain v. Metcalf, Zima & Co.*, 925 F.2d 1398, 1400 (11th Cir.1991). *But see Hyland v. New Haven Radiology Assocs., Ltd.*, 794 F.2d 793, 798 (2nd Cir. 1986) (physician-shareholders of professional corporation are employees for ADEA purposes); *Gorman v. North Pittsburgh Oral Surgery Assocs., Ltd.*, 664 F.Supp. 212, 214 (W.D.Pa.1987) (same).

facility is open for but a portion of the day, and on which diminished services may be offered? The nature of the Clinic's operation must be described to demonstrate the significance of these questions.

The Clinic is open six days a week. The posted business hours are from 8:30 a.m. to 9:00 p.m. on Monday through Thursday, from 8:30 a.m. to 5:00 p.m. on Friday, and from 9:00 a.m. to 2:00 p.m. on Saturday. Employees working during the morning, however, are expected to arrive at 8:00 a.m., and employees sometimes must stay until 10:00 p.m. or 11:00 p.m., at least on those four nights that the Clinic is open. Since the Clinic is staffed for more than seventy hours per week, it would appear that employees work in shifts. It also appears that there are greater numbers of employees on busier days than at other times.

The defendant's employee work records were furnished as exhibits to Lynn Reynolds' affidavit in support of the defendant's summary judgment motion. They constitute a listing of the days on which all of the Clinic's hourly employees were present for work. The records may be analyzed in any of three ways:

*1. Total Number of Persons Employed.* The records indicate that during at least twenty different "calendar weeks," in both 1988 and 1989, the Clinic had more than twenty full-time employees on its payroll, as well as a number of apparently part-time employees. The records do not indicate the number of hours per day that each employee worked, instead merely showing days at work. They also do not indicate sick leave, vacation days, or the like, which would increase the number of employees to be counted on each working day. With these limitations in mind, and using September 1989 (the month in which Ms. Wright received her termination notice) merely as an example, the records indicate that there were nineteen employees (in ad-

dition to Ms. Wright, Ms. Fletcher, and Mr. Reynolds) who worked at least ten days that month, and another six employees who worked eight days or less.

Viewed, as the statutes require, *i.e.*, on a calendar week basis, there were twenty-two, twenty-three, twenty-three, and twenty-four different employees (again, in addition to the three salaried individuals) who worked for the Clinic in weeks 1, 2, 3 and 4, respectively, in September 1989. Under this approach, the records would indicate that there were at least twenty calendar weeks in 1989 during which at least twenty different persons worked for the defendant. If this method of calculating the number of employees were used, the jurisdictional prerequisites of both the ADEA and Title VII would be satisfied.

*2. Number of Employees Working on Weekdays.* A different method of reckoning the number of employees is possible. In at least twenty different calendar weeks in both 1988 and 1989, the Clinic had between fifteen and twenty employees (excluding Ms. Wright, Ms. Fletcher, and Mr. Reynolds) actually present and "at work" on every weekday (Monday through Friday).[6] Under this approach, the requirements of Title VII would be satisfied, but the ADEA's somewhat higher threshold would not be met.

*3. Number of Employees on all Days in which Clinic was Open.* The Clinic argues for a third approach. Viewing Saturday as a "working day", albeit an abbreviated one, there was not even one single week during 1988 and 1989 in which the Clinic had the minimum number of employees actually present for work on every working day.[7] Under this third alternative, neither statute's jurisdictional requirements would be satisfied.

As noted, the ADEA and Title VII provide that a person is an "employer" if it "has [fifteen-ADEA] [twenty-Title VII] or

---

6. Using September 1989 as a representative month, the following number of non-salaried employees worked at the defendant's facility: Week # 1: 17, 15, 15, 11, 7; Week # 2: 15, 17, 20, 16, 13; Week # 3: 16, 16, 15, 15, 14; and Week # 4: 15, 16, 16, 17, 15.

7. Once again, using September 1989, as the example, the Clinic had two, seven, three, four, and four employees on each of the five Saturdays in that month.

more employees for each working day". Any of the three approaches set forth above is a possible interpretation of these two provisions.

### B.

■ Were this an open question, the court would opt for the first characterization of the Clinic's employment situation. It seems to the court that the far sounder interpretation of these statutes is that an employer "has" an employee not only if he or she works on a particular day, but rather if he or she is on the company's payroll. During all of 1988 and 1989, more than twenty persons, if asked for whom they worked, would have identified Kosciusko Medical Clinic as their "employer". More importantly, these were all persons who had a genuine "employment" relationship with the defendant. These twenty-plus individuals performed duties for the Clinic on a regular basis and were presumably paid on a regular schedule. Each owed certain duties to the Clinic, and each was entitled to certain financial benefits and to legal protections.

A recent Policy Statement by the Equal Employment Opportunity Commission supports this approach. EEOC Compliance Manual, Vol. II, Notice No. N–915–052, at p. 3 (issued April 20, 1990) ("The majority of courts that have addressed the issue have concluded that the proper standard in determining whether an employer has the requisite number of employees is to count the number of employees maintained on the payroll in a given week, rather than the number of employees who report to work on a given day."). The Policy Statement concludes that:

> [S]tatutory construction permits, and policy considerations and congressional intent mandate that under Title VII an employer who has fifteen employees on the payroll for twenty weeks of the year

meets the statutory definition of employer, while under the ADEA an employer who has twenty employees on the payroll for twenty weeks of the year meets the statutory definition of employer.

EEOC Compliance Manual, Vol. II, Notice No. N–915–052, at p. 6.

The Seventh Circuit, however, has taken the opposite approach to this question. In *Zimmerman v. North American Signal Co.*, 704 F.2d 347 (7th Cir.1983), the plaintiff argued for an approach similar to the first described alternative—that all salaried employees and all hourly employees who were on the employer's payroll for the particular week were part of the count. Rejecting this, the Seventh Circuit held:

> [The ADEA] provides that an employer must have twenty or more employees for *each working day* of a week before that week can be counted toward the jurisdictional minimum. This language is inconsistent with [the plaintiff's] approach of counting all workers on the payroll for a work week. Under his analysis, an hourly paid worker who works two hours each Monday would be counted as an employee for every day of the week, a result we believe would be contrary to the explicit definitional restriction chosen by Congress. We hold that the district court was correct in declining to count hourly paid workers as employees for days when they were neither working nor on paid leave.

*Zimmerman v. North American Signal Co.*, 704 F.2d at 353–354 (footnote omitted) (emphasis in original).[8]

*Zimmerman* focused on the words "each working day". The opposite result, however, and one that seems equally consistent with the statutory language, would be reached by focusing instead on the requirement that the "employer *have* twenty [or fifteen] or more employees". It is certainly not inconsistent with these definitional

---

**8.** The Seventh Circuit's holding was limited to hourly employees. The court held open the possibility of different treatment of salaried personnel. *Zimmerman*, 704 F.2d at 354 n. 6. The implication of Mr. Reynolds' affidavit is that the vast majority of the Clinic's employees are paid on an hourly basis. This case would present the question reserved in *Zimmerman* if they are salaried employees. *See Norman v. Levy*, 756 F.Supp. 1060, 1065 (N.D.Ill.1990) (continuing defendant's motion to dismiss, pending resolution of factual questions about number and status of employees).

provisions to conclude that an employer "has" an employee on a working day, even if that employee is not physically present on that day—especially if he or she was there the day before and is expected to show up for work on the next day. *Zimmerman* gave some recognition to that fact, by allowing inclusion of workers on vacation or sick leave in the total. It is not obvious why those categories of absent present workers should be counted, but one who works four or five days a week, instead of seven, should not be counted on those other days.

The approach taken in *Zimmerman* affords an employer the opportunity to circumvent the proscriptions of the ADEA and of Title VII, thereby denying the protection of those statutes to a substantial number of its employees. An employer can achieve this result by structuring its work force, if it keeps its staffing levels above the threshold on most working days, and allows it to fall under the level on just one work day.[9] In *Zimmerman*, for example, the employer had twenty employees from Monday through Thursday, but only nineteen showed up for work on Friday. It seems logistically possible for an employer, faced with discrimination suits by twenty-one employees who worked during the same period, to obtain dismissals of each suit on the ground that the employees did not all work on the same day of the week.

**9.** The EEOC's Policy Statement recognizes that the *Zimmerman* approach gives the employer an opportunity to circumvent the statutes' coverage:

> [C]onceivably under this approach, an employer who has a seven-day work week could claim that an employee who works eight hours per day for five days per week is not at work on each of the seven working days and therefore may not be counted as an employee. Employers could therefore manipulate work schedules to avoid coverage under Title VII. Policy Statement, at 5–6.

**10.** "We find no basis in the legislative history, canons of statutory interpretation, or public policy to support the *Zimmerman* position." Policy Statement, at 4.

Among the cases cited by the Policy Statement as taking a different approach from *Zimmerman* are *Thurber v. Jack Reilly's, Inc.,* 717 F.2d 633, 634–635 (1st Cir.1983), *cert. denied,* 466 U.S. 904, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984);

## C.

█] The EEOC Policy Statement noted that the Seventh Circuit's approach represented the view of a minority of courts, and it specifically criticized *Zimmerman.*[10] Nonetheless, it is not this court's place to disregard circuit precedent. Although the court urges its reconsideration, *Zimmerman* remains the law in this circuit. There was no calendar week during 1988 or 1989 in which the Clinic had more than twenty non-hourly employees for each working day. It follows that Ms. Wright's claim under the Age Discrimination in Employment Act must be dismissed.

## III.

█ While the ADEA imposes a threshold of twenty employees, Title VII has the lower, fifteen employee threshold. As noted, this minimum for Title VII would be satisfied in this case by following the second approach described above, but not under the third. Neither party has cited any authority as to what constitutes a "working day" for purposes of Title VII.

Adopting the defendant's suggested approach would draw the court nearer to the possibility, discussed above, that an employer could structure its work force to avoid Title VII coverage, seriously under-

*Dumas v. Town of Mt. Vernon,* 612 F.2d 974, 979 n. 7 (5th Cir.1980); *Gorman v. North Pittsburgh Oral Surgery Assocs.,* 664 F.Supp. 212, 214 (W.D.Pa.1987); *Evans v. Davie Truckers,* 38 FEP Cases 1553, 1554, 1984 WL 49007 (M.D.N.C. 1984), *aff'd,* 769 F.2d 1012 (4th Cir.1985); *Lynn v. JER Corp.,* 573 F.Supp. 17, 20 (M.D.Tenn. 1983); *Hornick v. Borough of Duryea,* 507 F.Supp. 1091, 1098 (M.D.Pa.1980); *Pedreyra v. Cornell Prescription Pharmacies,* 465 F.Supp. 936, 941 (D.Colo.1979); *Pascutoi v. Washburn–McReary Mortuary,* 11 FEP Cases 1325, 1327, 1975 WL 3615 (D.Minn.1975), *aff'd,* 566 F.2d 1178 (8th Cir.1977). *See also Musser v. Mountain View Broad. Inc.,* 578 F.Supp. 229, 230 (E.D.Tenn.1984).

Other courts following *Zimmerman* include *Schoenbaum v. Orange Cty. Center for the Performing Arts,* 677 F.Supp. 1036, 1039 (C.D.Cal. 1987), and *Greear v. C.E. Electronics, Inc.,* Civ. No. C87–7749 (N.D.Ohio Aug. 3, 1988). *See also McGraw v. Warren Cty. Oil Co.,* 707 F.2d 990, 991 (8th Cir.1983).

mining legislative goals. It would appear that while it is true that the Clinic is open for patients on Saturday as well as Monday through Friday, Saturday is not a "working day" in the same sense. First, the Clinic is only open five hours on Saturday, as opposed to the 12½ hours on Monday through Thursday, and 8½ hours on Friday. Second, the substantially diminished staffing level on Saturday, compared to the other five days, suggests that the normal range of patient services and office operations (such as patient billing, insurance, etc.) are not performed on that day.[11]

Treating diminished days of operation as "working days" would have anomalous, and potentially absurd, results: a 200–employee factory, running three shifts from Monday through Saturday, could be placed beyond the reach of Title VII by sending a lone telephone operator to work on Sunday. While the court does not suggest that the Clinic has so structured its operations to circumvent Title VII, a determination of the statute's reach must be objective, rather than dependent on some corporate state of mind.

Therefore, the court concludes that, for purposes of determining the scope of protection afforded by Title VII, a day on which the employer does not conduct normal, full operations is not to be treated as a "working day". This is not inconsistent with *Zimmerman*, since there the employer had a five-day work week, with a relatively comparable numbers of employees on each day.

The information supplied by the defendant indicates that it had at least fifteen employees on every full "working day" for at least twenty calendar weeks in 1988 and 1989. The jurisdictional requirement for application of Title VII is satisfied.

### IV.

It, therefore, follows that Kosciusko Medical Clinic, Inc. is an "employer" within

the meaning of Title VII, but it is not an "employer" within the meaning of the ADEA. Accordingly, the defendant's motion for summary judgment must be, and hereby is, GRANTED IN PART and DENIED IN PART. The defendant is entitled to judgment as to the plaintiff's claim for relief under the ADEA, and that claim therefore is DISMISSED. The defendant's summary judgment is DENIED with respect to the plaintiff's Title VII claim.

SO ORDERED.

### ON MOTION TO MODIFY

Ms. Wright brought this action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. On March 3, the court determined that it lacked jurisdiction over the ADEA claim, but had jurisdiction over the Title VII claim. Ms. Wright now asks the court to modify the March 3 order to allow interlocutory appeal pursuant to 28 U.S.C. § 1292(b) or to enter final judgment on the ADEA claim pursuant to Fed. R.Civ.P. 54(b).

Ms. Wright notes that the Seventh Circuit's computation of employees for jurisdictional purposes differs from the computation used in other circuits. *See Zimmerman v. North American Signal Co.*, 704 F.2d 347 (7th Cir.1983); *but see Thurber v. Jack Reilly's, Inc.*, 717 F.2d 633 (1st Cir. 1983), *cert. denied*, 466 U.S. 904, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984); *Dumas v. Town of Mt. Vernon*, 612 F.2d 974 (5th Cir.1980). Ms. Wright argues, therefore, that there is substantial ground for difference of opinion which would support an order allowing interlocutory appeal. Ms. Wright further argues that the issue of this court's jurisdiction over the ADEA claim should be resolved because if she is entitled to recover under the ADEA, she is not also entitled to recover under her retaliation claim. Ms. Wright also notes that an

---

11. Excerpts from Mr. Reynolds' deposition indicated that although there were generally four doctors who worked Monday through Thursday, and on Friday there were normally three doctors, only one doctor worked on Saturday. Furthermore, neither Ms. Wright nor her assistant, Ms. Fletcher, worked on Saturdays, indicating diminished office activity on that day. Reynolds' Deposition, pp. 19–20.

action brought in the Circuit Court of Fulton County, Indiana arising out of the same set of facts has been stayed pending resolution of this court's jurisdiction.

Defendant Kosciusko Medical Clinic, Inc. ("Kosciusko") argues that an interlocutory appeal is inappropriate because Ms. Wright failed to show how an immediate appeal of the issue of jurisdiction over the ADEA claim would materially advance the outcome of the litigation.

█] Kosciusko further argues that the court should deny Ms. Wright's request for final judgment pursuant to Fed.R.Civ.P. 54(b) because Ms. Wright has not shown how she will suffer unjust harm if final judgment is delayed pending resolution of the Title VII claim.

28 U.S.C. § 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Thus, three requirements must be met in order for the district court to certify a question for interlocutory appeal:

(1) the interlocutory order must involve a controlling question of law;

(2) there must be substantial ground for difference of opinion as to the controlling question; and

(3) the court must find that immediate appeal may materially advance the ultimate termination of the litigation.

The parties agree that jurisdiction over the ADEA claim is a controlling question of law. However, Kosciusko disagrees with Ms. Wright's claim that because the Seventh Circuit's test for jurisdiction differs from that of other circuits, there is substantial ground for difference of opinion. The Seventh Circuit test is set forth in *Zimmerman*. The court agrees with Kosciusko that there is not substantial ground

for difference of opinion as to the law in the Seventh Circuit.

Kosciusko and Ms. Wright also disagree as to the third factor under § 1292(b). Kosciusko argues that Ms. Wright has not shown how immediate appeal would materially advance the outcome of the litigation.

The Seventh Circuit considers circumstances in which interlocutory appeals should be granted the exception rather than the rule, and the burden is on the appellant to justify departing from the policy of postponing review until after final judgment. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S.Ct. 2454, 2461, 57 L.Ed.2d 351 (1977). In determining whether to certify a question for interlocutory review, the court must take special caution to avoid the risk that appeal may actually impede rather than expedite the conclusion of the entire case. *Fisons, Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir.), *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 581 (1972); *Kaken Pharmaceuticals Co. v. Eli Lilly and Co.*, 737 F.Supp. 510, 526 (S.D.Ind.1989). Ms. Wright has not met her burden of showing how immediate appeal would advance the outcome of this case.

█ Under Fed.R.Civ.P. 54(b), "the court may direct the entry of final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay." Whether to direct entry of final judgment pursuant to Fed.R.Civ.P. 54(b) is within the sound discretion of the court, and the court should consider such factors as the interest in avoiding duplicative appellate effort and the equities involved. *Schieffelin & Co. v. Valley Liquors, Inc.*, 823 F.2d 1064, 1065–66 (7th Cir.1987). Rule 54(b) is designed to allow piecemeal appeal in the unusual case in which a delay would be unduly harsh. *Bank of Lincolnwood v. Federal Leasing, Inc.*, 622 F.2d 944, 949, n. 7 (7th Cir.1980). Ms. Wright bears the burden of showing that she will suffer unjust harm from the normal delay pending resolution of all claims in the case. *Architectural Floor Products Co. v. Don Brann & Associates, Inc.*, 551 F.Supp. 802, 808 (N.D.Ill.1982).

The court finds that she has not met this burden. She has not shown how she would suffer a harsh result from delay pending resolution of the Title VII claim. Further, and more fundamentally, she has not shown that the ADEA claim and the Title VII claims are factually distinct, a requirement for Rule 54(b) certification in this circuit. *Buckley v. Fitzsimmons*, 919 F.2d 1230, 1237 (7th Cir.1990). Accordingly, the court concludes that Ms. Wright's motion should be denied.

For the foregoing reasons, the court hereby DENIES the plaintiff's motion for modification of the order of March 3, 1992 to permit interlocutory appeal or for final judgment on her claim under the Age Discrimination in Employment Act.

SO ORDERED.