BLUFF'S VISION CLINIC, P.C., APPELLEE, V.
SUSAN KRZYZANOWSKI, APPELLANT.

555 N.W.2d 556

Filed November 15, 1996.   No. S-94-787.

Tylor J. Petitt, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellant.

James M. Worden and Howard W. Olsen, Jr., of Simmons, Olsen, Ediger, Selzer, Ferguson & Carney, P.C., for appellee.

WHITE, C.J., CAPORALE, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ., and RIST, D.J.

LANPHIER, J.

Appellant Susan Krzyzanowski filed a complaint against her employer, appellee Bluff's Vision Clinic, P.C. (Bluff's), for employment discrimination pursuant to the Nebraska Fair

Employment Practice Act (Act), Neb. Rev. Stat. § 48-1101 et seq. (Reissue 1993). After a hearing, the Nebraska Equal Opportunity Commission (NEOC) found that Bluff's was an "employer" as defined in the Act, because it and a "related" entity, The Meat Shoppe, Inc., together employed the statutory requisite of 15 or more people each week during the time period in question. Bluff's appealed to the district court, which found that Bluff's was not an "employer" because it did not employ 15 people and that combining it with the other entity was improper. At issue is the method of counting employees: the "payroll" method, the count of those on the payroll each day, or the "workplace" method, the count of those who actually show up to work each day. Krzyzanowski appealed to the Nebraska Court of Appeals, which found that by using the payroll method, Bluff's did meet the statutory definition of "employer." *Bluff's Vision Clinic v. Krzyzanowski*, 4 Neb. App. 380, 543 N.W.2d 761 (1996). Bluff's petitioned for further review of that order. We conclude, by also using the payroll method, that Bluff's is an employer under the Act and thus the NEOC had jurisdiction. The judgment of the Court of Appeals is therefore affirmed.

## BACKGROUND

On June 21, 1993, Krzyzanowski filed a complaint with the NEOC, charging Bluff's with employment discrimination on the basis of gender and with retaliation. Bluff's moved to dismiss the complaint for lack of jurisdiction, stating that they were not an "employer" as defined in the Act.

A hearing was held on the motion. On October 27, 1993, the NEOC hearing examiner denied Bluff's motion to dismiss. The NEOC hearing examiner then held a public hearing, and on February 25, 1994, the examiner ruled that the NEOC had jurisdiction because Bluff's met the statutory definition of employer under the Act. The Act defines employer in part as "a person engaged in an industry who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." § 48-1102(2). Bluff's employed 15 or more people each week during the time period in question, but some of the employees were only part-time workers.

During the first quarter of 1991, Bluff's employed 11 full-time employees and 5 part-time employees. However, at least three part-time employees did not work 2 days of each week. Thus, even though Bluff's paid more than 15 people for each of these weeks, Bluff's did not have 15 people working on at least 2 days of these weeks. The same type of result occurs for the remaining quarters of 1991 and 1992. *Bluff's Vision Clinic v. Krzyzanowski, supra.*

The NEOC hearing examiner did not specifically address the method of counting part-time workers, but held that Bluff's did not employ the requisite 15 employees. However, the examiner held that Bluff's could be consolidated with another entity, The Meat Shoppe, and that by counting the employees of both entities, there was jurisdiction. The examiner for the NEOC further held that Bluff's had intentionally discriminated against Krzyzanowski. On March 4, 1994, the NEOC ordered that the hearing examiner's findings and conclusions be entered as the official final order of the NEOC.

On April 1, 1994, Bluff's filed an appeal of the NEOC's decision to the district court for Scotts Bluff County. One of the issues on appeal was the conclusion by the NEOC that it had jurisdiction over the parties. On July 27, the district court for Scotts Bluff County reversed the NEOC's decision and dismissed Krzyzanowski's complaint, stating that there was not sufficient evidence to indicate Bluff's was an employer so as to obtain jurisdiction in the NEOC and that the combination of entities was not proper.

Krzyzanowski appealed the district court's decision on jurisdiction to the Court of Appeals. The Court of Appeals applied the payroll theory of counting part-time employees, and reversed the decision of the district court and remanded the matter for further proceedings. *Bluff's Vision Clinic v. Krzyzanowski, supra.* It is from this order that Bluff's petitions for further review.

## ASSIGNMENTS OF ERROR

Krzyzanowski asserts that the district court erred in its determination that the NEOC lacked jurisdiction to resolve the parties' dispute.

In its petition for further review, Bluff's asserts that (1) the Court of Appeals erred in applying the payroll theory of counting employees because that issue was not argued before the district court and (2) the Court of Appeals erred in adopting the payroll theory for counting part-time employees.

## STANDARD OF REVIEW

A jurisdictional question that does not involve a factual dispute is a matter of law; therefore, an appellate court reaches a conclusion independent from that of the trial court. *In re Interest of Krystal P. et al.*, 248 Neb. 905, 540 N.W.2d 316 (1995); *In re Interest of Alex T. et al.*, 248 Neb. 899, 540 N.W.2d 310 (1995); *Jones v. State*, 248 Neb. 158, 532 N.W.2d 636 (1995).

## ANALYSIS

Bluff's denies that the NEOC has jurisdiction because Bluff's does not qualify as an "employer" as defined in § 48-1102. Bluff's further argues that it does not meet the definition of "employer" because it does not employ the requisite number of employees. Krzyzanowski, however, argues that Bluff's does meet the definition of "employer" because (1) part-time employees should be counted toward the jurisdictional prerequisite or, alternatively, (2) The Meat Shoppe should be combined with Bluff's because the two entities are sufficiently interrelated.

Bluff's argues that the Court of Appeals erred in applying the payroll theory to determine whether it ·was an "employer" because the only issue before that court was whether combining the entities was proper. However, the determination of "employer" for purposes of the Act is a jurisdictional question and thus a matter of law. In deciding a matter of law, we reach a conclusion independent from that of the trial court on the jurisdictional issue. *In re Interest of Krystal P. et al., supra*; *In re Interest of Alex T. et al., supra*; *Jones v. State, supra*.

In order for the NEOC to have jurisdiction, Bluff's must meet the definition of "employer" under the Act. Employer is defined as "a person engaged in an industry who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."

§ 48-1102. Because the Act is patterned after title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1994), it is appropriate to consider federal court decisions construing similar federal legislation. *City of Fort Calhoun v. Collins*, 243 Neb. 528, 500 N.W.2d 822 (1993); *Airport Inn v. Nebraska Equal Opp. Comm.*, 217 Neb. 852, 353 N.W.2d 727 (1984); *Zalkins Peerless Co. v. Nebraska Equal Opp. Comm.*, 217 Neb. 289, 348 N.W.2d 846 (1984).

In determining whether an entity has the requisite number of employees to qualify as an employer, federal courts have looked to (1) the actual number of employees the entity has for the time period in question and (2) whether the entity is sufficiently related to another entity so that combining the two would result in the requisite number of employees. See, e.g., *Thurber v. Jack Reilly's, Inc.*, 717 F.2d 633 (1st Cir. 1983), *cert. denied* 466 U.S. 904, 104 S. Ct. 1678, 80 L. Ed. 2d 153 (1984); *Zimmerman v. North American Signal Co.*, 704 F.2d 347 (7th Cir. 1983); *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389 (8th Cir. 1977); *Wright v. Kosciusko Medical Clinic, Inc.*, 791 F. Supp. 1327 (N.D. Ind. 1992).

Before reaching the issue of whether to combine entities however, a determination must be made as to whether the entity in question has enough employees to meet the statutory requirement in and of itself. In making this determination, federal courts have generally agreed that part-time employees may be counted. See, e.g., *Thurber v. Jack Reilly's, Inc., supra*; *Zimmerman v. North American Signal Co., supra*; *Dumas v. Town of Mount Vernon, Ala.*, 612 F.2d 974 (5th Cir. 1980); *Wright v. Kosciusko Medical Clinic, Inc., supra*; *Musser v. Mountain View Broadcasting, Inc.*, 578 F. Supp. 229 (E.D. Tenn. 1984). Other courts have disagreed on the method to be used for counting these employees. See *Reith v. Swenson*, 63 Fair Emp. Prac. Cas. (BNA) 885 (D. Kan. 1993) (discussing the payroll and workplace methods).

Two methods of counting employees have developed. The first method, the "payroll" method, counts an employee on a given day if he or she was on the payroll on that day. An employee does not have to physically report to work each day in order to be counted toward the jurisdictional prerequisite.

See, *Thurber v. Jack Reilly's, Inc., supra*; *Pedreyra v. Cornell Prescription Pharmacies*, 465 F. Supp 936 (D. Colo. 1979); *Reith v. Swenson, supra*; *Pascutoi v. Washburn-McReavy Mortuary*, 11 Fair Emp. Prac. Cas. (BNA) 1325 (D. Minn. 1975). Under the second method, the "workplace" method, the focus is on the statutory language "for each working day." Under this method, an employee is only counted toward the jurisdictional prerequisite if he or she physically reported to work that day or was on paid leave from work. See, *E.E.O.C. v. Metropolitan Educational Enterprises, Inc.*, 60 F.3d 1225 (7th Cir. 1995), *cert. granted* ___ U.S. ___, 116 S. Ct. 1260, 134 L. Ed. 2d 209 (1996); *E.E.O.C. v. Garden and Associates, Ltd.*, 956 F.2d 842 (8th Cir. 1992); *Zimmerman v. North American Signal Co., supra*.

The issue of which method to use to count these employees is one of first impression in Nebraska. Krzyzanowski contends that the payroll method should be applied and relies on the leading case following that method, *Thurber v. Jack Reilly's, Inc., supra*. In *Thurber*, a waitress brought an employment discrimination suit against her employer, a bar. The bar had approximately 9 employees working each day, but employed and paid over 15 employees in total for the weeks in question. Some of the employees were full-time workers and some were part-time workers. The bar alleged that it did not have enough employees to meet the statutory requirement because the language "for each working day" limited employees to those persons actually reporting for work each day.

The U.S. Court of Appeals for the First Circuit discarded the employer's argument, finding that a strict interpretation of the language "for each working day" was inconsistent with the remedial purposes of title VII. The court further held that the payroll method was more consistent with the remedial purpose of title VII. The remedial purpose of title VII is to eliminate the "inconvenience, unfairness and humiliation of discrimination." *Pedreyra v. Cornell Prescription Pharmacies*, 465 F. Supp. at 941. Krzyzanowski also relies on the policy statement of the Equal Employment Opportunity Commission (EEOC), 8 Fair Emp. Prac. Man. (BNA) 405:6857 (April 10, 1990), which rejects the workplace method. In this policy statement, the

EEOC states that under title VII, "an employer who has fifteen employees on the payroll for twenty weeks of the year meets the statutory definition of employer . . . . The Commission's position is that all regular part-time employees are counted whether they work part of each day or part of each week." *Id.* at 405:6860.

We determine that Krzyzanowski's position is the more persuasive, and we therefore adopt the payroll method. First, the payroll method is considered to be more consistent with the remedial purpose of the statute. See, *Pedreyra v. Cornell Prescription Pharmacies, supra*; *Pascutoi v. Washburn-McReavy Mortuary, supra*. Such an interpretation of the employee number requirement would allow a greater number of employers to be affected by the statute, advancing the purpose of eliminating discrimination.

Second, the language of the statute is consistent with the payroll method. Instead of focusing on the words "each working day," we interpret that phrase in the context of the entire sentence. Thus, the requirement that the employer "have" the requisite number of employees for each working day goes to whether the employee has a working relationship with the employer for the time in question, not whether the employee physically reported to work each day. As long as the worker is regularly and routinely expected to return to the job, attendance at the job may not be required each working day. *Reith v. Swenson*, 63 Fair Emp. Prac. Cas. (BNA) 885 (D. Kan. 1993). As the U.S. District Court for the District of Indiana stated in *Wright v. Kosciusko Medical Clinic, Inc.*, 791 F. Supp. 1327, 1331-32 (N.D. Ind. 1992):

> [T]he far sounder interpretation of these statutes is that an employer "has" an employee not only if he or she works on a particular day, but rather if he or she is on the company's payroll. During all of 1988 and 1989, more than twenty persons, if asked for whom they worked, would have identified Kosciusko Medical Clinic as their "employer". . . .
>
> . . . .
>
> . . . It is certainly not inconsistent with these definitional provisions to conclude that an employer "has" an

employee on a working day, even if that employee is not physically present on that day—especially if he or she was there the day before and is expected to show up for work on the next day. *Zimmerman* gave some recognition to that fact, by allowing inclusion of workers on vacation or sick leave in the total. It is not obvious why those categories of absent present workers should be counted, but one who works four or five days a week, instead of seven, should not be counted on those other days.

An employer " 'has' an employee 'for each working day' of a week if that employee is on the payroll[;] an 'employee-employer' relationship exists with reciprocal duties and benefits, and the employee is subject to the types of employment discrimination the statute is designed to prevent." *Reith v. Swenson*, 63 Fair Emp. Prac. Cas. (BNA) 885, 897 (D. Kan. 1993).

This interpretation does not render the phrase superfluous, but, rather, places emphasis on both "having" an employee, as well as having that employee "for each working day." To give particular emphasis to the "each working day" language of the Act would only defeat its purpose of preventing unfair employment practices. That interpretation would require that employees who work 2 hours every day must be counted, but would not require counting another employee who works 10-hour shifts 4 out of 5 days of the workweek, thus allowing employers to circumvent the Act. The very nature of today's changing work force makes it impossible for the court to say that a person must work 40 hours or more every week to be considered a full-time employee and thus subject to calculation for purposes of the Act. See *Pascutoi v. Washburn-McReavy Mortuary*, 11 Fair Emp. Prac. Cas. (BNA) 1325 (D. Minn. 1975). Any burden placed on small business by the Act is greatly outweighed by the benefit to be served. The Act does not put a weighty burden on small employers, but, rather, imposes the relatively small burden of forbearance from discrimination in employment. *Thurber v. Jack Reilly's, Inc.*, 717 F.2d 633 (1st cir. 1983), *cert. denied* 466 U.S. 904, 104 S. Ct. 1678, 80 L. Ed. 2d 153 (1984).

Finally, use of the payroll method simplifies the calculation of employees for the statutory requirement. One need only look

to see whether the employee is on the payroll on any given week, not whether or not the employee physically reported for work each day.

We conclude that the payroll method is the better method for counting employees and more appropriate for calculating the number of employees pursuant to § 48-1102(2). Thus, Bluff's, by definition, did employ 15 employees for each week in question and qualifies as an employer for purposes of the Act. Therefore, we need not reach the issue of whether or not the NEOC properly combined the two entities for calculating the number of employees.

## CONCLUSION

Bluff's was an employer as defined in § 48-1102(2) because application of the payroll method of counting employees indicates Bluff's employed the requisite number of employees for the time in question. Thus, we conclude that the Court of Appeals was correct in its application of the payroll method for counting employees and its determination that the NEOC had jurisdiction.

AFFIRMED.

FAHRNBRUCH, J., not participating.

CAPORALE, J., dissenting.

I disagree. The majority rests its decision of first impression under the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. §§ 48-1101 through 48-1126 (Reissue 1993), on ill-reasoned federal cases because it considers them to be "more consistent with the remedial purpose of the statute." This, I regretfully suggest, begs the question of what the Nebraska Legislature sought to remedy.

The express purpose of our act is to "foster the employment of all employable persons . . . on the basis of merit regardless of their race, color, religion, sex, disability, or national origin and to safeguard their right to obtain and hold employment without discrimination . . . ." § 48-1101. To accomplish that purpose, and apparently more, the act prohibits "an employer" from engaging in certain discriminatory acts based upon "race, color, religion, sex, disability, *marital status*, or national origin."

(Emphasis supplied.) § 48-1104. It defines employer, in pertinent part, as one "engaged in an industry who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." § 48-1102(2).

Thus, for whatever reason our Legislature deemed good and sufficient, the act does not undertake to end all employment discrimination, but merely to end such discrimination by those who are "engaged in an industry" and employ at least 15 workers "each working day." Leaving aside the question of what an industry might be, the majority, by counting all who are on the payroll on a given day irrespective of whether they are required to work that day, effectively reads the phrase "each working day" out of the statute and substitutes in its place and stead the phrase "on its payroll." As a result, § 48-1102(2) now operates as if it defined employer not as it does, but as one "engaged in an industry who has fifteen or more employees on its payroll in each of twenty or more calendar weeks in the current or preceding calendar year." I respectfully suggest that if that was what the Legislature had meant, it was fully capable of having said so.

Except when dealing with an ambiguous statute, *Seevers v. Potter*, 248 Neb. 621, 537 N.W.2d 505 (1995), or a constitutionally suspect one, *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994), our task is not to improve legislative language, but to apply it as written. See *Garza v. City of Omaha*, 215 Neb. 714, 340 N.W.2d 409 (1983) (court not permitted to read words into statute which are not there). See, also, *Nebraska Life & Health Ins. Guar. Assn. v. Dobias*, 247 Neb. 900, 531 N.W.2d 217 (1995); *Major Liquors, Inc. v. City of Omaha*, 188 Neb. 628, 198 N.W.2d 483 (1972) (courts do not substitute their social and economic beliefs for judgment of legislative bodies).

Having come to the conclusion that Bluff's Vision Clinic, P.C., does not itself employ the requisite number of workers, I must consider an issue the majority found unnecessary to reach, namely, whether, as Susan Krzyzanowski posits, the eye-care operations of Bluff's Vision, a professional corporation, are so interrelated with the food catering operations of The Meat Shoppe, Inc., a business corporation, that the employees of the latter must be considered to be the employees of the former as

well. In this regard, both Bluff's Vision and Krzyzanowski cite us to *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389 (8th Cir. 1977), which holds that there are circumstances whereunder it is appropriate to treat two allegedly separate business enterprises as a single entity for the purpose of determining whether there exists the requisite number of workers to bring one of the entities under the definition of "employers" for the purposes of title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1994). According to *Baker*, the factors to consider in making such a determination include the interrelation of the operations, the existence of common management, the existence of centralized controls, and the existence of common ownership or financial control. While Krzyzanowski urges that the requisite factors exist here, Bluff's Vision predictably argues otherwise.

I need not, and therefore do not, consider whether I accept the existence of these factors as an adequate basis upon which to pierce the corporate veil in cases of this type, for even if that were to prove to be the situation, the *Baker* factors are not present in this case.

The evidence demonstrates only that the president of one entity is also the president of the other; that he is a 50-percent shareholder of Bluff's Vision and, together with his wife, a 50-percent shareholder of Meat Shoppe; that he is one of two members of the board of directors of Bluff's Vision; and that he and his wife comprise two of the four members of the board of directors of Meat Shoppe. While it is true that the articles of incorporation and bylaws of Meat Shoppe give general control over its affairs to its board of directors and president, those circumstances do not, in and of themselves, establish that there is sufficient common ownership or financial control to warrant treating one entity as the alter ego of the other. Neither is there any evidence that the diverse business operations of the two entities are in any way interrelated, or that there is any centralized control of labor relations.

Accordingly, I would reverse the judgment of the Nebraska Court of Appeals and remand the cause thereto with the direction that it affirm the judgment of the district court.