Sam ZIMMERMAN, Plaintiff-Appellant,

v.

NORTH AMERICAN SIGNAL COMPANY, Defendant-Appellee.

No. 82–1415.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 1982.

Decided March 31, 1983.

Loretta C. Douglas, Chicago, Ill., for plaintiff-appellant.

Jack J. Carriglio, Foran, Wiss & Schultz, Chicago, Ill., for defendant-appellee.

Before ESCHBACH and COFFEY, Circuit Judges, and WISDOM, Senior Circuit Judge.[*]

ESCHBACH, Circuit Judge.

The appellant, Sam Zimmerman, brought suit against the appellee, North American Signal Company ("North American"), alleging unlawful age discrimination under the Age Discrimination in Employment Act ("the Act"), 29 U.S.C. §§ 621–634. The district court held that North American was not an "employer" as defined by § 11(b) of the Act, 29 U.S.C. § 630(b), and that the court therefore lacked subject matter jurisdiction. For the reasons below, we affirm.

---

[*] The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

## I

North American Signal Company assembles and distributes emergency warning lights and sirens. Sam Zimmerman, Julius Neiman and William Wisbrod each own approximately one third of the corporation's stock. Zimmerman was employed by North American as vice president from 1963 until January 26, 1979, when his employment was terminated. Zimmerman alleges that, at the time of the termination, he was 67 years old and that North American discharged him solely because of his age. Zimmerman continued in his position as a director until April, 1979. His stock ownership apparently remains unaffected.

Zimmerman filed suit in district court on January 22, 1981. After several extensions of time, North American moved to dismiss on April 7, 1981, asserting, *inter alia,* that North American had too few employees to meet the Act's jurisdictional definition of "employer." Zimmerman and North American filed several memoranda and affidavits in the ensuing months. On September 8, 1981, a status hearing was held, at which both parties said that the Motion to Dismiss was fully briefed. The court granted North American's Motion to Dismiss on September 15, 1981, finding no genuine factual dispute on the jurisdictional issue, deciding that the method used by North American to compute the number of its employees was correct, and holding that North American was not an "employer" as defined by the Act.

On September 23, 1981 Zimmerman filed a Motion to Vacate the dismissal order of September 15, to reconsider North American's Motion to Dismiss, and to permit discovery on the jurisdictional issue. Again, both parties filed several memoranda and affidavits. On February 9, 1982 the court denied Zimmerman's motion.

## II

Zimmerman raises several issues on appeal. First he contends that the district court erred in granting the defendant summary disposition on the jurisdictional matter when there were genuine issues of material fact. Next, he asserts that the district court used an incorrect method in counting the number of employees North American had during each week of the relevant period. Finally he claims that the district court erred in refusing to grant his Motion to Vacate the dismissal so he could conduct discovery on the jurisdictional issue and so he could present his theory that employees of an allegedly related corporation should also be included in the employee count.

## III

### A. *The Propriety of Summary Disposition of the Jurisdictional Issue*

North American moved to dismiss for lack of subject matter jurisdiction, asserting that it was not an "employer" as defined by § 11(b) of the Act, 29 U.S.C. § 630(b). North American presented the district court and Zimmerman with copies of its employment records for the relevant years, 1978 and 1979, submitted its analysis of the data, and concluded that it did not have the requisite number of employees for the requisite number of weeks to be considered an "employer" under the Act.[1] Zimmerman challenged North American's conclusion on four grounds, claiming that certain employees were missing from the employment records, that certain officers and directors should be counted as employees, that certain persons listed as employees on North American group medical plan should be counted as employees, and that the method used to calculate the number of employees for each week was incorrect.

The last three challenges present legal, not factual, questions. There is no substantial dispute that the persons Zimmerman claims to include in his count were, in fact,

---

1. Under § 11(b) of the Act, North American must have had twenty or more employees for each working day in each of twenty or more calendar weeks in the year of the alleged discrimination or in the preceding year. According to North American's calculations, it had twenty or more employees for each working day for 15 weeks in 1978 and for 10 weeks in 1979.

directors, officers or listed on the medical plan. Only the legal issue of which, if any, of these are "employees" under the Act is presented.

■ Zimmerman's first basis for challenge, however, goes to the accuracy of North American's employment records. Zimmerman claims to have personal knowledge that certain employees were on vacation during certain weeks, that this was not reflected in North American's records, and he asserts that these employees should be counted as employees for each day of their vacation. North American attempts to refute Zimmerman's recollections. However, the resolution of this minor factual dispute would have no effect on the jurisdictional issue. For the reasons we discuss below, we resolve the legal issues presented in this case in favor of North American. Even if we were to assume that Zimmerman was correct in his recollections about vacationing employees, counting all these persons as "employees" for each day Zimmerman says they were on vacation would not raise the employee count to or above the jurisdictional threshold.[2] The issue of uncounted, vacationing employees is not material to the outcome of this case and does not preclude summary disposition of the jurisdictional issue.

■ Zimmerman additionally argues that summary disposition of the jurisdictional issue was improper because the jurisdictional issue is inextricably intermeshed with the merits. We fail to discern any such relationship between the issue of the number of North American's employees and the issue of whether Zimmerman was discharged because of his age. Summary disposition of the jurisdictional issue was proper.

### B. Inclusion of Officers, Directors and Persons Listed on North American's Medical Plan

Zimmerman faults the method of counting employees used by North American and the district court because it fails to include several persons Zimmerman claims must be counted.

Zimmerman claims that the employee count should include Charlene Wisbrod and Gloria Neiman, wives of two of the major shareholders and officers of North American. In an affidavit, he alleges that they became vice presidents and directors of North American on April 20, 1979 and so remained for the balance of 1979. Affidavits of Julius Neiman and William Wisbrod state that their wives were vice presidents from April 20 through May 3, 1979, that Charlene Wisbrod became a director on May 3, 1979 and that Gloria Neiman became a director on April 20, 1979. At an April 20, 1979 meeting, the board of directors passed a resolution providing that directors would each receive $5,000.00 annually.

■ The calculations of North American and the district court include as employees for each working day of each week the paid officers of the corporation, including William Wisbrod, president, Julius Neiman, secretary-treasurer, and Zimmerman, vice president (until his dismissal on January 26, 1979). These persons were paid for their services as officers and actively worked for the corporation. It is substantially undisputed that Charlene Wisbrod and Gloria Neiman received no remuneration as vice presidents (whether their tenure ended on May 3, 1979 or continued throughout the year). Any payment they received was for their roles as directors. It is also substantially undisputed that they took no active role in the daily affairs of the corporation.[3]

---

**2.** Counting the persons Zimmerman claims were on vacation would increase the number of qualifying weeks from 15 to 18 in 1978 and would have no effect on the number of qualifying weeks in 1979. For these calculations we have used the table compiled by Julius Neiman in an affidavit in support of North American's Motion to Dismiss. While Zimmerman attacks the method of the analysis and alleges minor inaccuracies in the employment records, he does not contend that Nieman's table is an inaccurate reflection of the data in the employment records.

**3.** In his effort to convince this court that further discovery is necessary, Zimmerman asserts that further documentation must be produced to establish the relationship of Charlene

■ We cannot agree with Zimmerman that Charlene Wisbrod and Gloria Neiman should be considered employees of North American by virtue of their positions as directors or as unpaid, inactive officers. Zimmerman has failed to cite and we have found no case law, legislative history or any other indication that the term "employee" should be given this expansive meaning for the purpose of this Act. The legislative history of the nearly identical definitional provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), militates against distorting traditional concepts of employment relationships. "The term 'employer' is intended to have its common dictionary meaning, except as expressly qualified by the act." 110 Cong.Rec. 7216 (April 8, 1964). The term "employee" is "defined for the purpose of the title in the manner common for Federal statutes . . . ." H.R. Rep. No. 914, 88 Cong., 2d Sess., *reprinted in* 1964 U.S.Code Cong. & Ad.News 2355, 2402. We do not believe Congress intended the term "employee" to include persons who are no more than directors of a corporation or unpaid, inactive officers.[4] *Cf. Burke v. Friedman,* 556 F.2d 867, 870 (7th Cir.1977) (a partner is not an employee).

■ Zimmerman contends that the district court erred in failing to count as employees two persons, Sherwin Siegel and Phyllis Nathan, who were allegedly listed as employees on North American's group medical plan. Zimmerman at no time alleges that either of these persons worked for or were paid by North American. He relies solely on their classification as employees on the medical plan. However, the term used to describe a relationship is not dispositive of the nature of that relationship. *See Williams v. Evangelical Retirement Homes,* 454 F.Supp. 806, 807 (E.D.Mo.1978), *rev'd on other grounds,* 594 F.2d 701 (8th Cir.1979) (food service employee did not have Title VII claim against corporation when food service was an independent contractor, in spite of contract language referring to food service as "agent" of corporation). Moreover, Zimmerman referred to Siegel and Nathan as non-employees in a letter to North American dated April 11, 1979, leading us to question whether this contention is advanced in good faith.[5] The district court was correct in refusing to count Siegel and Nathan as employees of North American.

## C. The Method of Determining the Number of Employees for Each Week

Section 11 of the Age Discrimination in Employment Act provides:

(b) The term "employer" means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . .

29 U.S.C. § 630(b). This provision is nearly identical to the definition of employer in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b). Yet there is little legislative history or case law to guide us in

Wisbrod and Gloria Neiman to North American. However, while he contested by affidavit the length of their terms as vice presidents and directors, he did not similarly dispute the assertions in the affidavits of Julius Neiman and William Wisbrod that their wives received only compensation as directors and took no active role in the daily affairs of the corporation. His vague innuendos below and on appeal that there is more still to be discovered are too insubstantial to raise a genuine issue of fact.

4. We caution that employers cannot avoid having employees counted toward the jurisdictional threshold by denominating them as directors, independent contractors, or other designations besides "employee." The issue is whether an employer-employee relationship exists, not

what title a worker holds. By applying the Act's definitions to the evidence of this case, we conclude that the relationship between North American and these two directors/officers was not that of employer-employee.

5. That letter reads, in pertinent part:

I want the Automotive Wholesalers Medical Insurance to remain in effect as long as I want. This provision should be placed in writing. If North American Signal Co. refuses to let me have this insurance, I will "blow the whistle" on past payments payments [sic] made for non-employees, such as M.D. Zimmerman, Willard Goldman, Sherwin Siegel, and Phyllis Nathan, and all of their past paid medical bills.

interpreting these provisions. This case presents a close numerical question. If North American is correct in its method of calculation, it barely misses inclusion in the provision. If Zimmerman is correct, North American barely meets the requirement.

Under North American's method, salaried workers are counted as employees for every day of the week they are on the payroll, whether or not they were actually at work on a particular day. Its hourly paid workers are counted as employees only on days when they are actually at work and on days of paid leave. Thus an hourly paid worker who worked Monday through Thursday is not counted as an employee on Friday, regardless of the number of hours he worked that week and regardless of whether he is a permanent employee who will return the next week or a temporary employee who will not. If that worker is given a week of paid vacation, he is counted as an employee for each day of that week. For each day of each week, North American counted its employees using this method. Then for each week, it determined whether there were twenty or more employees for each day. If so, that week was counted toward the jurisdictional minimum. But if the number of employees fell below twenty on any day of the week, that week was not counted, regardless of the number of employees counted on the rest of the days. For example, for the week ending February 2, 1979, North American's analysis shows nineteen employees on Friday and twenty employees on Monday through Thursday. Since the count fell below twenty on Friday, North American does not count this week toward the jurisdictional minimum.

Zimmerman, on the other hand, would total all salaried workers and all hourly paid workers that worked or were on paid leave during the week. He arrives at his total by counting the number of workers on the payroll for each work week. Thus the week ending February 2, 1979 would be included toward the jurisdictional minimum using his approach, because twenty received paychecks for work done or leave taken during that work week. In essence, the hourly paid worker who worked Monday

through Thursday would be considered an employee on Friday also, based, we presume, on the proposition that the employment relationship is not broken on the day he does not work, at least if he returns the next week, as most North American workers seem to do.

Several district court cases lend support to Zimmerman's position. The court in *Hornick v. Borough of Duryea*, 507 F.Supp. 1091 (M.D.Pa.1980), held that school crossing guards are to be counted as employees, even though they only worked a couple of hours each day. But they apparently did work *each day* of the week. In a case which seems factually on point, another court held that the crucial question is how many employees were on the payroll during the week, not how many were at work on a given day. *Pascutoi v. Washburn-McReavy Mortuary*, 11 Fair Empl.Prac.Cas. (BNA) 1325, 1326–27 (D.Minn.1975). *See also Pedreyra v. Cornell Prescription Pharmacies*, 465 F.Supp. 936, 941 (D.Colo.1979) (citing *Pascutoi* with approval).

The Age Discrimination in Employment Act is remedial in nature and should be given liberal interpretation in order to effectuate the purpose of the Act. *Cf. Parham v. Southwestern Bell Telephone*, 433 F.2d 421, 425 (8th Cir.1970) (Title VII case). Such liberal construction should extend to the definition of employer. *Cf. Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 391 (8th Cir.1977) (Title VII case). Nevertheless, a court's interpretation of the term "employer" cannot contradict the statutory definition.

As a general rule, a court should not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous. *Conway County Farmers Association v. United States*, 588 F.2d 592, 598 (8th Cir.1978); *United States v. Marubeni America Corp.*, 611 F.2d 763, 767 (9th Cir.1980); *Zeigler Coal Co. v. Kleppe*, 536 F.2d 398, 406 (D.C.Cir.1976). This Act provides that an employer must have twenty or more employees for *each working day* of a week before that week can be counted to-

ward the jurisdictional minimum. This language is inconsistent with Zimmerman's approach of counting all workers on the payroll for a work week. Under his analysis, an hourly paid worker who works two hours each Monday would be counted as an employee for every day of the week, a result we believe would be contrary to the explicit definitional restriction chosen by Congress. We hold that the district court was correct in declining to count hourly paid workers as employees for days when they were neither working nor on paid leave.[6]

Congress could have exempted certain small employers from the Act's coverage by defining the jurisdictional minimum in terms of the number of employees on the payroll each week, the number of hours worked by each employee each week, the number of full time or permanent employees working each week, the total number of employee-hours worked each week, or by any other variation. The exact boundaries of the exemption would depend on which of these possibilities Congress chose; and under any definitional restriction, including the one proposed by Zimmerman, some cases would be close. Under the definitional restriction chosen by Congress, this is such a case. We hold that North American was not an "employer" for the purposes of the Act.

### D. The District Court's Refusal to Vacate the Dismissal

Zimmerman urges that the dismissal should have been vacated to allow him to conduct discovery on the jurisdictional issue and to present his theory that employees of an allegedly related corporation should be included in the employee count.

 Zimmerman argues that he was hampered in discovery prior to dismissal. However, we find nothing in the record to suggest that the district court in any way restrained discovery. While it does appear that both parties voluntarily agreed to refrain from discovery on the merits, we find

no indication that Zimmerman felt constrained in seeking discovery on the jurisdictional issue. Zimmerman was given copies of North American's employment records for 1978 and 1979, and had personal knowledge, gained through almost twenty years as vice president, of the company's practices and personnel. At the September 8, 1981 status hearing, Zimmerman represented to the court that the Motion to Dismiss was fully briefed. These circumstances indicate that Zimmerman did not seek discovery because he had all the information he thought he needed. The district court did not err in refusing to vacate the dismissal for additional discovery.

 In his Motion to Vacate, Zimmerman raised for the first time his assertion that the employee count should include the employees of Transtronics Corporation, a supplier of components to North American. Zimmerman stated in a supporting affidavit that he is a 16⅔% shareholder in Transtronics and is familiar with the ownership and operations of North American and Transtronics in 1978 and 1979. The district court treated Zimmerman's motion as a Motion to Amend or Alter a Judgment under Fed.R.Civ.P. 59(e) and denied the motion on the ground that Zimmerman had no justification for not offering this evidence prior to the dismissal. It is evident from Zimmerman's affidavit that North American's connection with Transtronics cannot be considered "newly discovered" evidence. Zimmerman offers no reason why he could not have presented the evidence before the dismissal. The district court did not abuse its discretion in denying Zimmerman's motion to re-open the case to consider North American's connection with Transtronics. See *Butler v. Pettigrew,* 409 F.2d 1205, 1207 (7th Cir.1969).

### IV

The decision of the district court dismissing the case for lack of subject matter jurisdiction is affirmed.

---

**6.** We do not reach and express no opinion on those issues not necessary for our conclusion that North American does not meet the jurisdictional requirements of the Act. These issues include the method of counting hourly paid

workers on paid leave, the method of counting hourly paid workers on non-paid standby status, and the method of counting salaried workers.