**Mary Jane ROGERS, Plaintiff,**

v.

**SUGAR TREE PRODUCTS, INC., Defendant.**

**No. 90 C 20219.**

United States District Court, N.D. Illinois, W.D.

July 17, 1992.

Lawrence Schlam, Northern Illinois University College of Law, DeKalb, IL, for plaintiff.

Peter D. DeBruyne, DeBruyne, Yalden & Olsen, Rockford, IL, for defendant.

## ORDER

REINHARD, District Judge.

### Introduction

Mary Jane Rogers, plaintiff, has filed a one-count complaint against Sugar Tree Products, Inc., defendant, alleging that defendant violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* Defendant has filed a motion to dismiss for lack of subject matter jurisdiction.

### Facts [1]

Defendant is a Missouri corporation with its plant in Belvidere, Illinois. It is a subchapter "S" corporation. Defendant manufactures animal feed from food waste products. During the relevant period of time in this case, October 17, 1987, to October 16, 1989, it is undisputed that defendant employed at least 17 employees. From 1973 to October 16, 1989, defendant employed plaintiff. Defendant is owned by Fred Brown. Brown is president of defendant with responsibility to direct its operations. Defendant rents the plant facilities and warehouse in Belvidere from Brown's family.

Fred Brown also owns and is president of International Distributing Corporation (IDC). IDC is also a Missouri corporation, located in St. Louis, Missouri. IDC process-

es food products. It is undisputed that IDC employs more than 20 employees.

In 1986, Brown purchased all the stock of defendant owned by David Oatman. Oatman and Brown were each 50% owners of the business until Oatman sold his stock to Brown. Oatman remained on the payroll until August 30, 1989, and was occasionally present on defendant's premises in 1989. During his deposition, Brown testified to the following:

Q: Okay. And that [the purchase of shares] terminated Mr. Oatman's relationship with the company?

A: Not really. He was supposed to work but he—we haven't seen him in a few years.

Q: So he's still technically an employee of Sugar Tree?

A: Yes, he is.

The decision to terminate plaintiff was made by Brown, Jim Sullivan and Bryan Damerow. Defendant has characterized Sullivan as a consultant for defendant who was regularly employed by IDC. However, plaintiff states that Sullivan is "ostensibly employed by IDC." Sullivan took part in reorganizing defendant in 1989 and hiring plaintiff's replacement. Sullivan also participated in hiring James Jones as the production manager of defendant in June 1989. During the evidentiary hearing, Damerow, the former plant manager of defendant from January 1, 1989, to August 1, 1989, said that he considered Sullivan to be his boss. However, James Jones, who later became plant manager, testified that he thought that Sullivan was a consultant for defendant. According to Damerow, he reported all facets of defendant's operations to Sullivan, and that he and Sullivan determined the operational objectives of defendant. It is stipulated that Sullivan would receive a bonus each year for the work he did for defendant while he was a full-time employee of IDC. The bonus is based on a formula of how profitable defendant had been that year. The bonus is reported on an IRS Form 1099. Although plaintiff asserts that Sullivan was compensated by IDC for his travel expenses when he

---

1. The facts are taken from an evidentiary hearing held June 19, 1992, the depositions of Fred Brown, James Jones and William Schmalz and a joint stipulation of agreed facts.

went to defendant's premises, Jones testified that defendant compensated Sullivan for his expenses. Finally, Sullivan responded to plaintiff's Equal Employment Opportunity Commission charge with a letter on defendant's stationary, and Sullivan signed the letter as "Agricultural VP." Defendant contends that Sullivan's reference in the letter as "Agricultural VP" of defendant was a mischaracterization.

Three other employees of IDC also performed some tasks for defendant: William Schmalz, Paul Burckhart and Judy Larson (formerly Pikesly). These three individuals received bonuses for the work they did for defendant. William Schmalz is the chief financial officer of IDC and performs financial services for defendant, including preparing monthly financial statements and tax returns. Schmalz oversees defendant's inventory and financial records. Schmalz estimated that he works only one hour per month on these matters for defendant. Unlike Sullivan's bonus, the bonus Schmalz receives is not based on the profitability of defendant.

Paul Burckhart is a bookkeeper for IDC. Although Burckhart is not on defendant's payroll, he spends one-third of his time working on matters for defendant. Burckhart kept financial records of defendant and recorded and made payments for defendant to its creditors. Invoices for defendant's sales are, however, sent out by defendant. Although Judy Larson, from St. Louis, Missouri, arranged for common carriers to transport defendant's product from Belvidere, Illinois, Damerow arranged for local pick-ups and deliveries. Larson also gave directions and instructions to plaintiff.

Although not included on the list of employees, plaintiff's exhibit #1 includes the name of John Tillman, who worked for defendant from April 21, 1989, to July 28, 1990. Defendant contends that Tillman was not employed for 20 weeks during the relevant period, and plaintiff does not contradict that contention. James Jones, the plant manager for defendant, began his employment with defendant on June 15, 1989.

In addition to the personnel described above, defendant and IDC are related in other ways. Defendant did some business with IDC. The parties stipulated that defendant's sales to IDC represented 40% of defendant's business. This business with IDC totalled $300,000 a year. According to defendant, these transactions were done at "arm's length." Defendant also charged IDC to store material for IDC in Belvidere. Further, as noted previously, IDC scheduled the shipping of defendant's product through a common carrier. Both defendant and IDC have a common pension plan but each made separate contributions to the plan for its own employees. Prior to 1980, defendant had a separate plan but it was terminated because defendant did not have 25 employees as required under the plan.

### Contentions

Defendant contends that this court lacks subject matter jurisdiction because defendant did not employ 20 or more employees for 20 weeks during the relevant period. Plaintiff contends that defendant employed the requisite number of employees, or in the alternative, that defendant and IDC are integrated so as to be a single employer.

### Discussion

 The burden of showing jurisdiction is on the party asserting jurisdiction. *See Bowyer v. United States Department of Air Force,* 875 F.2d 632, 635 (7th Cir.1989). District courts view whatever evidence has been submitted to determine whether in fact subject matter jurisdiction exists. *Bowyer,* 875 F.2d at 635. If the evidence raises a factual controversy, the district court must weigh the conflicting evidence in determining whether subject matter jurisdiction exists. *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979).

Section 630(b) defines "employer" as the following: "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630(b). The parties have agreed that the relevant time frame is the period between October 17, 1987, and October 16, 1989.[2] An

**2.** Although the parties have stipulated that the relevant time is October 17, 1987, to October 16,

"employee" is "an individual employed by any employer." 29 U.S.C. § 630(b). Thus, the determination of who is an employer depends on who is an employee.

■■■ The Seventh Circuit has stated that the term "employer" is intended to have its common dictionary meaning and that the term "employee" is defined in the manner common to federal statutes. *Zimmerman v. North American Signal Co.*, 704 F.2d 347, 352 (7th Cir.1983). In *Zimmerman*, the court held that unpaid, inactive officers are not "employees," *Zimmerman*, 704 F.2d at 352, and that hourly paid workers are not employees when they are neither working nor on paid leave, *Zimmerman*, 704 F.2d at 354; *see also, McGraw*, 707 F.2d at 991; *but see Gorman v. North Pittsburgh Oral Surgery Associates*, 664 F.Supp. 212, 214 (W.D.Pa.1987); *Hornick v. Borough of Duryea*, 507 F.Supp. 1091, 1098 (M.D.Pa.1980). Further, in the Seventh Circuit, shareholders or directors are generally employers rather than employees. *See Chavero v. Local 241*, 787 F.2d 1154, 1156 (7th Cir.1986); *E.E.O.C. v. Dowd & Dowd, Ltd.*, 736 F.2d 1177, 1178 (7th Cir.1984); *see also Burke v. Friedman*, 556 F.2d 867, 869 (7th Cir.1977) (partner in accounting firm is employer not employee under Title VII); *but see Gorman*, 664 F.Supp. at 214. In determining whether an individual is an employee, a court must apply the economic realities test. *See Knight v. United Farm Bureau Mutual Insurance Co.*, 950 F.2d 377, 378 (7th Cir.1991) (Title VII case). There are five factors under the economic realities test: (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required; (3) responsibility for the costs of operation; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations. *Knight*, 950 F.2d at 378–79.

Of these factors, control is the most important. *Knight*, 950 F.2d at 378.[3]

As noted previously, the parties have stipulated that defendant employed at least 17 employees during the relevant period. Therefore, if plaintiff can show that three other individuals were employees under the statute, then she has shown that defendant is subject to the ADEA. The individuals whom plaintiff contends are employees pursuant to § 630(b) are the following: Schmalz, Burckhart, Larson, Sullivan, Oatman, and taken together, Jones and Tillman.

■■ Jones was an employee of defendant from June 15, 1989, to October 13, 1989. Tillman was an employee of defendant from April 21, 1989, to July 28, 1989. Plaintiff contends that taken together, defendant employed one or both of them for each day during the relevant time period. Defendant contends that Jones and Tillman cannot be counted as employees because they had not been employed by defendant for 20 weeks prior to October 16, 1989. Plaintiff contends that an individual need not be employed for 20 weeks before being counted as an employee.

■■■ A district court's construction of a statute is a matter of law. *United States v. Powell*, 929 F.2d 1190, 1193 (7th Cir.1991). In construing a statute, the court must effectuate the overall legislative intent. *United States v. Roy*, 830 F.2d 628, 634 (7th Cir. 1987). In determining the meaning of a statute, a federal court must first look to the plain meaning of the statute before looking beyond the words themselves. *Oneida Tribe of Indians v. Wisconsin*, 951 F.2d 757, 760–61 (7th Cir.1991). When the statute's language is plain, the sole function of the court is to enforce it according to its terms. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). According to the Seventh Circuit, the fact that the ADEA is a

1989, "calendar year" appears to be the year between January 1 through December 31, and not any period of twelve consecutive calendar months. *See McGraw v. Warren County Oil Co.*, 707 F.2d 990, 991 (8th Cir.1983).

**3.** This court recognizes that the "economic realities" test may be of limited applicability under

the facts of this case because the main focus of the test is on control of the worker. In this case, because Fred Brown owns both IDC and defendant, he controls the employees of both companies. In this case, the critical question is whether Brown was controlling his employees while he was acting on behalf of IDC or defendant.

"remedial" statute does not invest it with a talismanic quality so as to disregard other canons of statutory construction. *Graczyk v. United Steelworkers of America*, 763 F.2d 256, 262 (7th Cir.1985).

 Nothing in the plain statutory language requires that an individual work for 20 weeks before being counted as an employee. Section 630(b) defines "employer" as "a person engaged in an industry affecting commerce who has *twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.*" 29 U.S.C. § 630(b) (Emphasis added). All that the statute requires is that the employer have 20 or more employees for each day of 20 or more calendar weeks. It does not require that a particular individual be employed for 20 weeks prior to being counted as an employee.

When the employment of Tillman and Jones are combined, defendant employed an employee for 20 weeks during the relevant period. Therefore, at this point, plaintiff has shown that defendant has employed 18 employees during the relevant period.

 Plaintiff also contends that Schmalz, Burckhart and Larson are employees pursuant to § 630(b) of defendant. These three individuals were not controlled by defendant; they were employees of IDC which is owned by Brown, who also happens to own defendant. It appears they took their directions from Brown to work for defendant because Brown controlled them through their employment at IDC. It appears Brown did not control them in his status as owner of defendant, but as owner of IDC. Further, although they were paid for their work, the payment was in the form of lump-sum bonuses and not as salary. Also, the length of their commitment to defendant was relatively short. Furthermore, the responsibility for the costs of their operations was not born by defendant, and their work was done in St. Louis, Missouri. Therefore, these individuals cannot be counted as employees of defendant.

 Plaintiff asserts that Sullivan is an employee under § 630(b). Whether Sullivan meets the statutory definition of an "employee" is a close determination. There are facts which tend to show that Sullivan is not an employee of defendant. First, Sullivan works for IDC out of the IDC office in St. Louis. However, he visits defendant's premises seven or eight times a year. Second, Sullivan is not paid a salary from defendant and this court assumes he was paid a salary by IDC. However, he is paid a bonus which is determined by the profitability of defendant.

On the other hand, there are facts which show that Sullivan is an employee of defendant. First, Damerow, the plant manager of defendant, testified that he thought Sullivan was his boss. Second, although defendant now contends that it was a mischaracterization, Sullivan signed a response to the Equal Employment Opportunity Commission as "Agricultural VP" on defendant's stationary. Third, Sullivan appears to have the power to hire and fire defendant's employees. Sullivan took part in the firing of plaintiff and hired James Jones as operations manager of defendant. Jones consulted with Sullivan weekly and submitted any major purchase requests to him. Further, defendant paid for Sullivan's travel and expenses when he visited defendant's premises. While this fact could be interpreted as showing that Sullivan was a consultant, in light of the other facts, this court believes that it tends to show that Sullivan was an employee of defendant. Therefore, defendant employed 19 employees at the relevant time.

 Plaintiff also attempts to show that Oatman is a statutory employee of defendant. Again, whether Oatman is an employee presents a close question. There is evidence that Oatman was on defendant's payroll during the relevant period and that on rare occasions, he would appear at defendant's premises. However, the economic reality of Oatman's "employment" is that he was bought out. He sold his shares of defendant to Fred Brown, and in exchange, he remained on the payroll while doing almost no work. Damerow testified that on only one occasion after Brown purchased Oatman's shares did Oatman participate in any tangible way with the operation of defendant. Although Brown stated that Oatman was technically an em-

ployee of defendant, he also stated that they had not seen him for a few years. There is no evidence that Oatman performed any work or reported for work during the time period in question. An employer who allows an individual not to be present at work for years certainly does not control that employee. Further, the expectations of Oatman were obviously not fixed. Oatman appears to be more like a salaried worker who is on paid leave. *Cf. Zimmerman*, 704 F.2d at 354. Although Brown knew that Oatman was on the payroll and did not work, Oatman also appears to be similar to a "ghost employee," a person who is on the payroll but who does not actually work for the employer. *See, e.g., United States v. Kopituk*, 690 F.2d 1289, 1301 (11th Cir.1982); *Wren v. Jones*, 457 F.Supp. 234, 242 (S.D.Ill.1978). This court does not believe that Congress intended "employee" for purposes of the ADEA to mean an individual like Oatman who was bought out of his company, who does only minimal work, if any, and who is not controlled by the employer, but remains on the payroll.

Therefore, plaintiff has not met her burden of showing that defendant employed the jurisdictional number of employees. Plaintiff has only shown that defendant employed 19 employees during the relevant time period, according to the agreement of the parties. Defendant must rely on its alternative argument that IDC and defendant were integrated so as to be a single employer under the ADEA.

▌ In the context of the National Labor Relations Act, an integrated employer exists when two nominally separate entities are actually part of a single enterprise so that for all purposes there is but one employer. *N.L.R.B. v. Western Temporary Services Inc.*, 821 F.2d 1258, 1266 (7th Cir.1987). This standard has been applied to cases arising under the ADEA, and separate business entities are considered to be a single employer for purposes of counting the number of employees when certain factors are met: first, interrelation of operations such as common offices, records and equipment; second, common management, directors and personnel; third, centralized control of labor relations and personnel; and fourth, common ownership and financial control. *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir.1982); *see also Evans v. McDonald's Corp.*, 936 F.2d 1087, 1089 (10th Cir.1991) (Title VII case); *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir.1987) (Title VII case). No one factor is controlling. *Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir.1983). Although centralized control over labor relations is the . central concern, *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir.1983), there may be a finding of an integrated employer without centralized control, *Armbruster*, 711 F.2d at 1338. However, to be considered an integrated employer, the relationship between the two entities must be highly integrated with respect to ownership and operations. *McKenzie*, 834 F.2d at 933.

The facts of this case do not apply neatly to the four factors because Brown owns both defendant and IDC and has control over the labor relations of both.[4] While it could be argued that his combined ownership and centralized control over labor relations indicates that defendant and IDC are integrated, such an argument proves too much because Brown's centralized control over labor relations is merely based on the fact that he owns both companies. The critical inquiry is whether his actions taken regarding labor relations were done pursuant to his status as owner of defendant or IDC or both.

▌ Nevertheless, applying the factors to this case, plaintiff has failed to meet her burden of showing that defendant and IDC are so integrated as to be a single employer. Although there is some interrelationship of operations such as long distance shipping, there are no common offices (except for Brown's and Sullivan's), or equipment or plant facilities. They are separate entities located in different states. Further, although tax and some financial and billing

---

4. Although defendant contends that the factual situation presented here is unique, plaintiff contends that *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir.1983) is factually similar. This court believes that *Trevino* is factually distinguishable because there is no showing that *Trevino* involved a single individual owning and controlling two separate companies.

records were prepared at IDC, there is no showing that the records were common between defendant and IDC. Payroll and daily operations are independent. The only common management between defendant and IDC is Sullivan. Although Sullivan has some management functions for defendant, the evidence of his management of defendant is not sufficient because on most occasions he seemed to be acting on behalf of Brown. Sullivan appears to be carrying out the directives of the owner. As noted previously, the centralized control over labor relations results from the common ownership of Brown.

This court does not believe that the doctrine of integrated employers is met when the primary reason that the companies are related is the fact that a single individual owns and controls the two separate entities. There must also be a showing of interrelationship. Although there is some interrelationship in this case, defendant and IDC are not highly integrated in their actual operations. Defendant and IDC are not part of a single integrated enterprise. The doctrine of integrated enterprise would be stretched too far if the fact that a common owner controlled two separate entities resulted in an integrated enterprise under the circumstances present here.

## Conclusion

Defendant's motion to dismiss for lack of subject matter jurisdiction is granted. The cause is dismissed without prejudice.