Christina M. GOUDEAU

v.

**DENTAL HEALTH SERVICES, INC., et al.**

Civ. A. No. 93–449–B–1.

United States District Court,
M.D. Louisiana.

Oct. 10, 1995.

Durward D. Casteel, Baton Rouge, LA, for Plaintiff Christina M. Goudeau.

Tony G. Sanders, Covington, LA, for Defendants Dental Health Services, Inc. d/b/a Landmark Dental Care, James L. Jeansonne, Barry D. Gathright and Cleveland C. Carpenter, III.

### RULING

POLOZOLA, District Judge.

After independently reviewing the Special Master's Report to which an objection was filed, the Court hereby adopts the Special Master's Report as the Court's opinion in this case.

Therefore,

IT IS ORDERED that plaintiff's case be dismissed for lack of subject matter jurisdiction. Judgment shall be entered accordingly.

### SPECIAL MASTER'S REPORT

RIEDLINGER, United States Magistrate Judge.

This matter is before the court following an evidentiary hearing limited to the issue of whether the court has subject matter jurisdiction over this case under 42 U.S.C. § 2000e. Defendants asserted lack of subject matter jurisdiction as a defense in their answer,[1] contending that they do not meet the definition of "employer" as that term is defined in section 2000e(b). Defendants[2] admitted that they were engaged in an industry affecting commerce, but denied that they had the requisite 15 employees for 20 or more calendar weeks in either the year of the alleged discrimination or the year preceding it.[3]

---

1. Record document number 3, paragraphs 2, 4 and 6.

2. In addition to Dental Health Services, Inc., d/b/a Landmark Dental Care, Inc., the defendants include the four dentists who owned the corporation. Plaintiff named them as defendants alleging that they are agents of the corporation. 42 U.S.C. § 2000e(b). The individual defendants' motion for summary judgment, based on the argument that they did not fall within the definition of an employer for Title VII purposes, was denied. Record document number 20. This report and recommendation applies to all of the defendants, but for convenience, the singular will be used.

3. Plaintiff alleged that in September of 1990 she was fired from her position as a dental assistant with Dental Health Services, Inc. Plaintiff claimed that the termination was based on religious discrimination in violation of 42 U.S.C.

Defendant Dental Health Services, Inc. d/b/a Landmark Dental Care contends that it is not an employer as defined under Title VII. This argument raises three related legal issues. Two questions involve the definition of "employee" under section 2000e(f). The third issue requires the court to examine the meaning of Title VII's definition of employer. In order to decide which employees can be counted to determine whether the employer meets the requisite number of 15, the court must interpret what is meant by Title VII's requirement that an employer "has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." An analysis of the law applicable to all three issues will help to determine what evidence is relevant to each issue.

### Employee or Independent Contractor

■ Title VII defines an employee as "an individual employed by an employer." 42 U.S.C. § 2000e(f). In order to determine whether a person is an employee or independent contractor the court must apply the test used by the Fifth Circuit for determining the existence of an employment relationship. In *Mares v. Marsh*[4] the court adopted the hybrid economic realities/common law control test. This test utilizes a list of factors for the court to consider and emphasizes that consideration of all the circumstances of the work relationship is essential, and that no one factor is determinative. *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 505 (5th Cir. 1994). However, the right to control an employee's work is the most important factor.[5] In addition to the right to control, the other factors considered when assessing the economic reality of the alleged employment relationship are: (1) the kind of occupation, with reference to whether the work is usually done under the direction of a supervisor or is done by a specialist without supervision; (2)

the skill required in the particular occupation; (3) whether the employer or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated, i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties.

### Classification of the Dentists as Employees

■ Defendant contended that the dentists stockholders of corporation should not be counted as employees. Defendant argued that the four dentists, who were shareholders in the professional corporation engaged in the practice of dentistry and incorporated under Louisiana law,[6] were in reality more like partners in a partnership, i.e., that the management, control and ownership of the corporation was much like the management, control and ownership of a partnership. Defendant relied upon several decisions which specifically address the employment relationship issue in the context of professional corporations and partnerships. *EEOC v. Dowd & Dowd, Ltd.*, 736 F.2d 1177 (7th Cir.1984); *Wheeler v. Hurdman*, 825 F.2d 257 (10th Cir.1987), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987); *Fountain v. Metcalf, Zima & Company*, 925 F.2d 1398 (11th Cir.1991). Plaintiff relied upon other decisions which addressed the same issue and reached the opposite conclusion. *Hyland v. New Haven Radiology Assoc.*, 794 F.2d 793 (2d Cir.1986);[7] *Gorman v. North*

---

§ 2000e–2(a). Thus, 1989 and 1990 are the relevant years for counting numbers of employees.

**4.** 777 F.2d 1066, 1067 (5th Cir.1985).

**5.** The right to control an employee's work means the right to direct the work of the individual not only as to the result, but also as to the details by which that result is achieved. *Fields v. Hallsville*

*Indep. School Dist.*, 906 F.2d 1017, 1019 (5th Cir.1990), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991).

**6.** *See*, LSA–R.S. 12:981, et seq.

**7.** *Hyland* and the cases following it focus more on the business form chosen by the professionals

*Pittsburgh Oral Surgery Assoc.,* 664 F.Supp. 212 (W.D.Pa.1987); *Jones v. Baskin, Flaherty, Elliot & Mannino, P.C.,* 670 F.Supp. 597 (W.D.Pa.1987), *aff'd without op.,* 897 F.2d 522 (3d Cir.1990), *cert. denied,* 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990).[8]

■ No Fifth Circuit decision was cited or found which specifically addresses the issue of the Title VII employment status of stockholders in a professional corporation. The Fifth Circuit applies the hybrid economic realities/common law control test to determine whether an individual is an employee or independent contractor. A review of decisions applying this test, as well as the cases which address the issue when a professional corporation or partnership is involved, shows that the court cannot look merely at the label placed on an individual's status but must look to the particular facts of each case and determine the economic realities of the relationship. *See, Fountain,* 925 F.2d at 1400–01. On this point *EEOC v. Dowd & Dowd, Ltd.* and the cases following it are more persuasive. Therefore, it is appropriate to utilize the factors of the hybrid economic realities/common law control test that are relevant here, and look for guidance to the cases in other circuits that have specifically addressed this issue in the context of professional corporations and partnerships, to determine whether the dentists themselves are employees.

### Counting of Employees for Title VII Jurisdiction

Whether the defendant has enough employees to satisfy the definition of employer turns on the interpretation of the phrase "who has fifteen or more employees for each working day."

■ Title VII does not specify the method of counting employees under section 2000e(b). There are two recognized methods. One method, adopted by some courts and endorsed in the EEOC's Statement of Policy Guidance, is the payroll method.[9] The payroll method looks to the working days in each calendar week to see whether there were 15 or more employees maintained on an employer's payroll, regardless of whether they were actually working full time or on any particular day. The result of this method is that hourly or part time employees count toward the minimum if they are on the payroll of a particular calendar week, even though they are not present at work on each day of the work week.

The Fifth Circuit, in a footnote in *Dumas,* referred to the payroll method of counting in discussing whether CETA workers and other part time employees should be counted to determine whether the town employed 15 or more people in at least 20 weeks. However, in *Dumas* the court acknowledged that it did not have to decide the correct method of counting because even including the CETA and part time employees the number of weeks in which the town employed at least 15 people did not reach the minimum requirement of 20 weeks. *Dumas,* 612 F.2d at 980. Thus, the language in *Dumas* seemingly approving the payroll method is dicta.

■ The method adopted by the Seventh and Eighth Circuits interprets the phrase to mean that all salaried employees count, but takes a different approach with hourly or

---

rather than the economic realities of the work relationship. *Hyland,* 794 F.2d at 796.

**8.** A review of these six cases shows that some alleged this issue in order to determine whether an entity had the requisite number of employees to meet the statutory definition of employer. Other cases looked at the employment relationship in the professional corporation or partnership to determine whether a particular individual was an employee entitled to bring suit. The definitions of employee and employer under Title VII, the Age Discrimination in Employment Act (ADEA), and the Fair Labor Standards Act (FSLA) are substantially the same. *Hyland,* 794

F.2d at 796. Therefore, the cases cited and discussed in this report may involve one or more of these acts.

**9.** *Thurber v. Jack Reilly's, Inc.,* 717 F.2d 633, 634–35 (1st Cir.1983), *cert. denied,* 466 U.S. 904, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984); *Edwards v. Esau Invs.,* 66 FEP Cases 711, 1994 WL 606073 (D.Kan.1994); *Cohen v. S.U.P.A., Inc.,* 814 F.Supp. 251, 256 (N.D.N.Y.1993); *Gorman v. North Pittsburgh Oral Surgery Assoc.,* 664 F.Supp. 212, 214 (W.D.Pa.1987); *Lynn v. JER Corp.,* 573 F.Supp. 17, 20 (M.D.Tenn.1983); *see, Dumas v. Town of Mount Vernon,* 612 F.2d 974, 979, n. 7 (5th Cir.1980).

part time workers. These workers are counted toward the jurisdictional number only on days when they are physically present at work or are on paid leave. *EEOC v. Metropolitan Educ. Enterprises,* 60 F.3d 1225 (7th Cir.1995) (reaffirming *Zimmerman* ) *petition for certiorari filed* (Aug. 14, 1995); *EEOC v. Garden & Associates, Ltd.,* 956 F.2d 842 (8th Cir.1992); *Zimmerman v. North American Signal Co.,* 704 F.2d 347, 353–54 (7th Cir.1983); *Richardson v. Bedford Place Hous.,* 855 F.Supp. 366 (N.D.Ga. 1994).[10] The central rationale of these decisions is that this method of counting is most consistent with a plain reading of the language of the statute. In *Zimmerman* the court stated that the most natural interpretation of the phrase "for each working day" looks to the number of employees physically at work on each day of the work week. *Richardson,* 855 F.Supp. at 370.[11] To adopt the payroll method and count hourly or part time workers if they are on the weekly payroll, even if they were not at work each work day, would render this phrase meaningless or superfluous. *Zimmerman,* 704 F.2d at 353.

■ Plaintiff's argument in favor of applying the payroll method, and its reliance on policy considerations, is unpersuasive. To begin with, Congress clearly did not intend that Title VII cover all employers. No matter what method of counting the number of employees is used, some threshold determination will still have to be made. In the vast majority of cases this will be an extremely simple task, as evidenced by the dearth of cases in which this issue is dispositive.[12] Only in the rare marginal case will the task become more burdensome, and even then it is unlikely that it will be difficult. Plaintiff's

argument that it would be a tedious task to determine the number of employees who reported to work each day during the two year period provided for by the statute [13] is an overstatement. It is more likely that since only small employers will contend that they are not covered by Title VII, the amount of documents which would reflect the employees at work on any given day—such as time cards and work schedules—is unlikely to be substantial.[14]

■ The second policy consideration argued by the plaintiff is the concern that counting only employees physically present each work day would allow an employer to manipulate work schedules to avoid Title VII coverage. Again, as noted previously, the statute does not apply to all employers. There is no persuasive evidence in any of the cases upon which the plaintiff relied, or generally, that employers are manipulating their work schedules to avoid Title VII coverage. Absent some persuasive evidence that corrective action needs to be taken to counteract demonstrated manipulation of work schedules to avoid Title VII coverage, use of the payroll method is not warranted. Additionally, because the payroll method is inconsistent with the statutory requirement that there be 15 or more employees for each working day, its use should be directed by Congress rather than the courts.

■ The holding and reasoning of *Zimmerman* and the cases adopting its analysis are persuasive. Following the method set forth in *Zimmerman* for counting hourly or part-time employees in the case, these types

---

10. *See also, Lord v. Casco Bay Weekly, Inc.,* 789 F.Supp. 32, 34–35 (D.Me.1992); *Norman v. Levy,* 756 F.Supp. 1060, 1063–64 (N.D.Ill.1990).

11. The court in *Richardson* presents a good analysis of the two lines of cases and points out the weaknesses in the First Circuit's reasoning in *Thurber.* Also, if the language of footnote seven in *Dumas* had been a holding, it would be binding precedent in the Eleventh Circuit since *Dumas* was rendered prior to October 1, 1981 when the Fifth Circuit was split. *Richardson,* 855 F.Supp. at 368, n. 3.

12. In the Fifth Circuit, for example, the only appellate case found is *Dumas.*

13. Record document number 42, p. 6, Plaintiff's Memorandum Regarding the Counting of Employees for Jurisdictional Purposes, citing EEOC Policy Guidance, Chapter 405, § 6860, App. 103–A.

14. In this case, it was necessary to call only one witness to testify about the number of employees for each working day of the defendant's work week.

of workers will only be counted on the days they actually worked.[15]

### Review and Analysis of the Evidence

■ As the party invoking the court's jurisdiction, plaintiff bears the burden of proving jurisdiction once it is challenged by the defendant. Plaintiff offered the testimony of two witnesses and documents to establish that the defendant is an employer under Title VII. Both witnesses were credible; virtually none of the evidence is seriously disputed.

Plaintiff claimed that one individual who performed services for the defendant satisfied Title VII's definition of employee and so should be counted. Lyna Buckley is a Certified Public Accountant who performs computer payroll accounting services for the defendant and began performing these services in February of 1990. She has specialized training and experience in computer accounting systems. In 1990 Buckley had five or six ongoing clients, other than the defendants, and several occasional customers. Buckley testified that there is no written contract between her and the defendant and that she never considered herself an employee of the defendant. She worked with the defendant's computer equipment at its place of business and also provided services over the phone. Her main contact was with the defendant's office manager or receptionist to arrange convenient times to go the office to start up new programs, solve problems or assist the employees in using the computer programs.

Defendant did not set her hours. Buckley's hours depended upon whether she was initiating some new program or solving problems as they arose with an established program. Buckley testified that she was paid on an hourly basis, based on invoices she submitted. Exhibit P–2. Either she or the defendant could have ended the work relationship at any time. Defendant provided her no annual leave or retirement benefits and did not pay her social security taxes. Buckley performed all the services and had

no other employee she could send to do the work.

■ Application of the hybrid economic realities/common law control test results in the conclusion that Buckley is an independent contractor. She performed specialized computer accounting services not only for the defendant but other clients as well. After an initial start up period her services were called upon as needed. Importantly, neither Buckley nor the defendant considered her to be an employee. Consequently, Buckley cannot be counted as an employee for the purpose of determining whether the defendant is an employer under Title VII.

Dr. Cleveland Carpenter testified that he and the other three dentists were the only shareholders of the corporation during 1989 and 1990. At that time two of the dentists each owned one-third of the outstanding shares. He and the fourth dentist each owned one-half of the remaining shares. Dr. Carpenter worked as a dentist for the corporation before he became a shareholder on January 5, 1989. His pay was based on a percentage of the fees collected from his patients. After he became a shareholder he was still compensated based on a percentage of collections, but the percentage was larger. The other three dentists were also compensated based on a percentage of the fees collected from their respective patients. The balance of the patient fees collected was retained by the defendant corporation and used for payment of employee salaries, business overhead, supplies and other expenses.

Dr. Carpenter testified that in August of 1989 he formed his own corporation and contracted with the defendant to use its facilities in order to provide dental services to his own patients. This arrangement lasted until 1991. During this time, Dr. Carpenter explained, he was not on the defendant's payroll. Exhibit P–3. His corporation was an independent contractor which kept separate

---

**15.** Just as in *Richardson,* this court need not address whether salaried employees should be counted for each day of the work week whether or not they actually are at work on a particular day. *Richardson,* 855 F.Supp. at 370, n. 8.

Counting the part time workers only on the days they actually worked, if the dentists are excluded altogether the jurisdictional numbers will not be satisfied even if salaried employees are counted for each day of the work week.

accounts and paid its own taxes.[16] When Dr. Carpenter returned to work directly for the defendant in late 1991 he returned also to being compensated based on a percentage of collections from his patients.

During 1990, however, there were time cards which reflected hours that Dr. Carpenter worked for the defendant. He explained that these payments were not from a payroll account but were from the defendant's general account. During this time he was paid to prepare an office policy and procedures manual, at the rate of $10.00 per hour. This occurred during August and September of 1989. The manual was completed and published in November 1989. Dr. Carpenter testified that the other doctors felt he should be compensated for this project. Otherwise, they would have had to pay someone else to prepare these documents.

When questioned about the distribution of profits, Dr. Carpenter explained that the defendant sponsors a profit sharing plan to provide retirement benefits and which, ideally, should help the corporation minimize its income tax liability by reducing the amount of taxable profits. The amount of money contributed to the plan annually is determined with the help of an accounting firm.

As to hiring and firing employees, Dr. Carpenter testified that it was agreed among the four dentists that Dr. Jeansonne would be the personnel manager. Although Dr. Jeansonne makes the final decision, the other dentists all have an opportunity to give their input and make a recommendation.

■ As in *EEOC v. Dowd & Dowd, Ltd.,* the economic reality of the professional dental corporation in Louisiana is that the management, control and ownership of the corporation is much like the management, control and ownership of a partnership. Only duly licensed dentists may form a professional dental corporation, and only for the purpose of practicing dentistry. LSA–R.S. 12:982. Shareholders must be persons licensed to practice dentistry in Louisiana, or another

professional dental corporation; only they may participate in the corporation's earnings. Any other shareholder has no voting rights whatsoever and may not participate in the corporation's earnings. R.S. 12:985. Forming a professional dental corporation does not relieve the individual shareholder-dentist from liability on account of fraud or breach of professional duty or other negligent or wrongful act, but the shareholder is not personally liable for any debts or liabilities of the corporation. R.S. 12:990.

While it is undisputed that the defendant's dental hygienists—none of whom were shareholders—were compensated in part based on a percentage of the fees collected from their respective patients, this similarity in the basis of compensation is insufficient to support classifying the dentists as employees. According to Dr. Carpenter, there is such a strong demand for qualified dental hygienists, and so few of them available, that dental hygienists on the whole in the Baton Rouge area are more able to effectively negotiate the terms and conditions of their employment. For example, dental hygienists who worked for the defendant could essentially set their own hours during the work day. There was simply an understanding that there should be at least one dental hygienist available during business hours.

The testimony showed that the individual dentists and those employees who were qualified shared in the defendant's profits through its profit sharing plan. A percentage of the dentists' fees collected was retained by the defendant to pay employee salaries, expenses and overhead.[17] Only the dentists had authority to hire and fire employees, and among themselves they agreed that Dr. Jeansonne would have the final authority in personnel matters.

■ Although it would be a simple matter to classify all persons who work for a corporation as its employees, *see Hyland, supra,* this simplistic approach ignores mod-

---

**16.** Dr. Carpenter's medical corporation was dissolved in 1992.

**17.** As Dr. Carpenter testified, this was also true of the dental hygienists. Although it is not disputed that the dental hygienists were employees, several characteristics of their employment were similar to those of an independent contractor.

ern day economic reality. There is no evidence in this case—or in the cases cited by the parties and in this report—that the decision to form a professional corporation rather than a partnership is made based on some desire to avoid Title VII liability. Rather, it seems apparent that the purpose of forming a professional corporation is simply to take advantage of favorable tax treatment and to avoid certain financial liability. Simply declaring that all persons who worked for a professional corporation are its employees exalts form over substance and ignores all characteristics of the business entity except the form chosen by its owners. It seems particularly inappropriate in Title VII litigation to focus only on the label rather than the reality.[18]

■ Consideration of all the circumstances surrounding the organization and ownership of the defendant corporation, its relationship with the dentists shareholders, and their relationship to the defendant's employees supports the finding that the dentists are not employees for the purposes of Title VII.

The parties also presented statistical evidence regarding the number of full and part time employees on the defendant's payroll for the years 1989 and 1990. Exhibits D 1–4.[19] It is unnecessary to review in detail the evidence presented regarding the number of employees who worked for the defendant during 1989 and 1990. It is necessary, however, to note the evidence regarding the defendant's work week and typical staffing pattern.

Dr. Carpenter testified that the defendant's work week was 7:30 a.m. to 8:00 p.m. Monday through Friday and 9:00 a.m. to 5:00 p.m. on Saturday.[20] On Thursday a staff meeting was held from 1:30 to 3:00 p.m., during which time no patients were seen. The office was staffed with dentists, front desk secretaries, dental assistants and dental hygienists. There were four dentists, two of whom worked full time and two part time. The secretaries and dental assistants were organized into teams, labeled the Blue Team and the Gold Team. One team was scheduled from 7:30 a.m. until 2:00 p.m.; the other from 1:30 p.m. to 8:00 p.m., Monday through Friday.[21] The dental hygienists were not team members. They were organized in two shifts and the shift times did not necessarily

---

**18.** Rejecting the *Hyland* approach and applying the economic realities/common law control test does not always result in the conclusion that the shareholder in a professional corporation is not a Title VII employee. For example, in *Jones v. Baskin, Flaherty, Elliot & Mannino, P.C., supra,* the court concluded that the plaintiff, although a shareholder in a law firm organized as a professional corporation, was nonetheless an employee under the ADEA. Jones received no profits or dividends from the firm, but only a salary and his expenses. Each shareholder of the corporation was paid as an employee. Taxes and FICA contributions were withheld even from the shareholders' pay. Each shareholder received a W–2 form. Importantly, *Jones* was never on the board of directors of the corporation nor was he a member of the executive or operating committees which managed the firm's day-to-day affairs. Nor was Jones an officer or department head. Considering all of these circumstances, the court concluded that Jones had little control over the management of the corporation, but it had considerable control over him and his work. The economic reality of his employment supported the conclusion that he was an employee under the ADEA.

**19.** The data were presented on long charts referred to as scrolls during the evidentiary hearing. The data are complete and comprehensive, although the form is somewhat unwieldy. Each scroll covered approximately one-half of a calendar year. Exhibit D–1, also labeled 1989A, covers the first half of 1989; Exhibit D–2, also labeled 1989B, covers the second half of 1989; Exhibit D–3, also labeled 1990A, covers the first half of 1990; and Exhibit D–4, also labeled 1990B, covers the second half of 1990.

For the convenience of counsel for the plaintiff, Dr. Carpenter referred to the plaintiff's recompilation of the data rather than the scrolls introduced into evidence. The recompilation was not allowed into evidence, but has been provided to the court for its use in correlating Dr. Carpenter's testimony with the data in Exhibits D 1–4.

**20.** Defendant leased space in Cortana Mall, a major shopping mall in Baton Rouge. Dr. Carpenter testified that the lease required that the office be open a certain number of hours per day and on Saturday. Defendant's work week was structured to comply with its lease.

**21.** Dr. Carpenter testified that until late 1989 or early 1990 the hours worked by the teams did not overlap. This slight change of work hours has no effect on the outcome of this case.

coincide with the team hours.[22] The dental hygienists were expected to work eight hours a day but they could decide when during the day those eight hours would be worked.

The teams were set up to work schedules which, over the course of the two week payroll period, would result in approximately 80 hours. For example, during week one the Blue Team would work Monday through Friday but not Saturday; the Gold Team would work Monday through Thursday and Saturday but would be off on Friday. Saturday was a single shift day.

Dr. Carpenter testified that the defendant used part time employees for a variety of reasons. Part time workers were used primarily to fill in for full time or regular employees who were off work for some reason. When there was insufficient work to justify hiring an additional full time employee, a part time employee was hired.[23] Part time employees were also used as demand for particular services fluctuated from time to time.[24] On the typical Saturday, neither of the two full time dental hygienists would work. Throughout 1989 and 1990 there were several different part time dental hygienists who worked on Saturday.[25]

Typically, employees on the payroll during the work week consisted of four full time secretaries, Sylvia Jeansonne and/or Sharon Lowery, six full time dental assistants, Brian Kirkpatrick as a part time dental assistant, two full time dental hygienists, and one part time dental hygienist working on Saturday, for a total of 15–16 employees (not including the dentists). The total number of employees on the payroll would fluctuate, according to Dr. Carpenter, depending on the need to bring in substitute secretaries, dental assistants and dental hygienists.[26]

A review of the data in Exhibits D 1–4, with the help of the plaintiff's recompilation, confirms Dr. Carpenter's conclusions about the number of employees at work during each week of 1989 and 1990. If only the dentists are excluded, but all full time and part time employees are included, there were no weeks during 1989 or 1990 when 15 or more employees worked each day of the defendant's Monday through Saturday work week. If the dentists—only two of whom worked full time—are counted, along with all full time employees, but the part time employees are excluded, there were only 50 days during 1989 and 73 days during 1990 when 15 or more employees worked each day of the defendant's work week. Consequently, the defendant did not have 15 or more employees for each working day in each of 20 or more calendar weeks during either 1989 or 1990.[27] Under the applicable law, the

---

22. That the dental hygienists were not part of either team is indicative of the higher degree of independence they had as compared to other employees.

23. For example, Brian Kirkpatrick worked for the defendant throughout 1989 and 1990 on a regular, part time basis. Dr. Carpenter testified that during those two years there were only three weeks when he did not work at least some hours. However, during none of the work weeks did Kirkpatrick work even as many as five days.

Sylvia Jeansonne is another example of a part time employee who worked regularly. During the first half of 1989 there were some weeks when she did not work at all, but then there were some periods of time where she worked consistently, from week to week, but only one or two days per week. Her work pattern was consistent throughout the second half of 1989 and until April of 1990. She did not work at all during the second half of 1990. Exhibits D 1–4.

Sharon Lowery was another part time secretary who Sylvia Jeansonne trained to do bookkeeping. Lowery started work in March of 1989. There were some weeks she skipped entirely, but

in the others she worked mostly one or two days. Exhibits D 1–4.

24. Dr. Carpenter referred to this last category as hiring part time employees "due to increased production."

25. These included Kathy Campbell, Lisa Wells, Rene Higginbotham and Nancy Darden, who frequently worked on Saturday.

26. For example, during the work week beginning June 25, 1990 one full time secretary resigned and another began work. That week there were five "full time" secretaries on the payroll but no more than four present on any work day.

For the work week beginning July 16, 1990 there were five dental hygienists on the payroll, but no more than two on Monday through Friday and only one on Saturday.

27. However, if all employees on the payroll during the work week are counted, even excluding the dentists, then there were 15 or more employees in each of 20 or more calendar weeks during both 1989 and 1990.

defendant does not meet the section 2000e(b) definition of an employer.

### Conclusions

For the purpose of determining whether Dental Health Services, Inc. is an employer as defined by section 2000e(b), none of the dentists shareholders of the corporation can be counted as an employee. Lyna K. Buckley is properly classified an independent contractor, so she cannot be counted as an employee either. Nor can the part time employees be counted as employees on those days when they did not actually work. Counting all full time employees for each day of the work week,[28] and all part time employees on the days they actually worked, leaves the defendant well short of the 15 or more employees for each working day during 20 or more calendar weeks in either 1989 or 1990. Therefore, the defendant is not a Title VII employer.

### RECOMMENDATION

It is the recommendation of the magistrate judge that the plaintiff's action be dismissed.